Submitted on the record and brief filed on behalf of the Oregon State Bar May 19, 1986, accused disbarred April 14, 1987

In re Complaint as to the Conduct of
## DAVID C. MILLER,
*Accused.*

(OSB 83-127 and 83-128; SC S32748)

735 P2d 591

George A. Riemer, General Counsel, Portland, filed the brief for the Oregon State Bar.

Alex Parks, Portland, appeared on behalf of the accused by letter.

PER CURIAM

## PER CURIAM

This is an attorney discipline proceeding. The accused and the Oregon State Bar submitted to the trial panel a "Joint Stipulation of Facts and Recommendation"[1] in which the accused admitted violations of Disciplinary Rule 2-106(A) and *former* Disciplinary Rules 1-102(A)(4) and 9-102(A)[2] of the Code of Professional Responsibility. Both the accused and the Bar recommended that the accused be suspended from the practice of law for two years; that, before reinstatement, the accused be required to pass a professional responsibility examination; and that he be placed on probation for the first two years after reinstatement on the condition that deposits and withdrawals from his trust account be monitored by the Bar. The trial panel found that the accused had violated the above provisions and "recommended"[3] suspension for a period of three years along with the other conditions recommended by the parties. We review *de novo.* ORS 9.536(3). We find the accused guilty of the alleged violations and order that he be disbarred.

## I. THE CHARGES

1. *Former Disciplinary Rule 9-102(A).*

*Former* DR 9-102(A) provided:

"All funds of clients paid to a lawyer or law firm, including advances for costs and expenses, shall be deposited in one or more identifiable trust accounts maintained in the state in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein except as follows:

"(1) Funds reasonably sufficient to pay account charges may be deposited therein.

"(2) Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited therein, but the portion belonging to the lawyer or law firm may be withdrawn when due unless the right of the

---

[1] This stipulation as to certain facts differs from a "stipulation for discipline" under Oregon State Bar Rule of Procedure 3.6.

[2] Now renumbered as Disciplinary Rules 1-102(A)(3) and 9-101(A), respectively. This opinion will use the former numbers, where applicable.

[3] In fact, a trial panel of the Disciplinary Board is the equivalent of a trial court. It decides, not recommends. *In re Willer,* 303 Or 241, 248 n 12, 735 P2d 594 (1987); *In re Hedrick,* 301 Or 750, 752 n 1, 725 P2d 343 (1986).

lawyer or law firm to receive it is disputed by the client, in which event the disputed portion shall not be withdrawn until the dispute is finally resolved."

The facts relating to this violation are taken from the parties' stipulation. On two occasions, the accused transferred funds held for a client, Dr. Golden, from the accused's trust account to his office account before earning fees or advancing costs in an amount sufficient to justify the transfers. On June 16, 1983, the accused transferred $10,000, when unpaid fees earned and costs advanced totaled slightly over $1,000. On August 1, 1983, he transferred $10,000, when there were no unpaid fees earned or costs advanced. By the end of August, 1983, the accused had earned fees and advanced costs sufficient to justify the transfers.

We find the accused guilty of violating former DR 9-102(A).

> 2. *Former Disciplinary Rule 1-102(A)(4) and Disciplinary Rule 2-106(A).*

*Former* DR 1-102(A)(4) provided:

"A lawyer shall not:

"* * * * *

"(4)  Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation."

DR 2-106(A) provides:

"A lawyer shall not enter into an agreement for, charge or collect an illegal or clearly excessive fee."

According to the parties' stipulations, the accused billed Dr. Golden for 12 hours of work allegedly performed on January 21, 1983. On that date, the accused did not perform any work for Dr. Golden but, instead, took depositions in an unrelated case and billed that client for the same 12 hours. Although the error was brought to the accused's attention, he failed to correct it and Dr. Golden paid for the 12 hours. The accused denies that he intentionally failed to correct the error.

The accused represented Roger and Arlene Chinn from February, 1982, to February, 1983. During that time, the accused billed the Chinns over $100,000. His billing statements were prepared by his secretary from daily time records

and were sent out once or twice each month. The accused occasionally would increase the number of hours shown on the billing statements. According to the secretary, the accused added an average of 5 to 15 hours per billing statement; the additions usually were made after the accused examined the balance in the office checking account. The accused argues that the additional hours were justified as work actually performed but not recorded on the daily time records. We conclude, however, that the accused billed according to his own needs, not according to the work he actually had performed.

In March 1983, the accused flew to Cleveland and Tampa to take depositions on behalf of the Chinns. He billed the Chinns for first class air fare; however, he actually flew coach class and used the extra money to purchase a coach class ticket for his wife. The accused offers no explanation of this incident.

We find that the above conduct constituted violations of *former* Disciplinary Rule 1-102(A)(4) and Disciplinary Rule 2-106(A). We turn to the appropriate sanction to be imposed.

## II. DISPOSITION

The purpose of imposing sanctions in attorney discipline cases is not to punish the accused, but to protect the public and to uphold the integrity of the legal profession. *In re Bristow,* 301 Or 194, 206, 721 P2d 437 (1986). In *Bristow,* this court adopted the following factors to determine the appropriate sanction: (1) the type of duty violated by the accused, (2) the accused's mental state at the time of the violation, (3) the extent of the actual or potential injury caused by the violation and (4) the existence of any aggravating or mitigating circumstances. 301 Or at 206-7 n 3. *See* American Bar Association, *Standards for Imposing Lawyer Sanctions* 5 (1985).

In this case, the accused violated both the duty not to misuse client funds with which he had been entrusted and the duty to claim fees only for work done. These duties are fundamental to the attorney-client relationship. Their violation injures not only the client but the integrity of the entire legal profession.

The second factor is the accused's mental state. On this element, the burden of persuasion is on the Bar. *In re*

*Holman,* 297 Or 36, 67, 682 P2d 243 (1984). In this case, the parties stipulated that the accused failed to correct the 12 hours erroneously billed to Dr. Golden, even after the error was called to his attention. The accused also sometimes added 5 to 15 hours to the Chinns' billing statements. In light of the repetitive nature of this practice and the amount of hours routinely added, we cannot accept the accused's explanation that he was merely correcting oversights. We conclude that the accused intentionally committed the violations.

The third factor is the injury caused by the violations. Dr. Golden was not actually injured by the accused's premature transfers of funds, because the accused later earned enough in fees to justify the transfers. The rule against commingling, however, is intended to protect clients from the *risk* of loss and to avoid the appearance of wrongdoing. *In re Windsor,* 231 Or 349, 350-51, 373 P2d 612 (1962). The accused's conduct created the *potential* that Dr. Golden would be injured. The accused's other violations actually injured his clients by requiring them to pay for services that were never rendered and expenses that were never incurred. The accused's actions in this regard amounted to stealing his clients' money. *In re Kerrigan,* 271 Or 1, 6, 530 P2d 26 (1975).

The accused waived appearance before this court, advancing no mitigating circumstances for our consideration. The accused had been a member of the Bar for only two to three years when the violations occurred. There is no indication on the record before us of any prior disciplinary action taken against him. Aggravating circumstances include the repeated instances of the same type of misconduct. There is no evidence that the accused made any effort to repay his clients.

One other factor, not considered in *Bristow,* requires mention here. This case was presented to the trial panel by the Bar and the accused on a stipulation that the Bar would only seek a two-year suspension. This stipulation — whatever its motivation — significantly shortened the time required to dispose of this disciplinary matter. We do not wish to discourage such stipulations. On the other hand, such stipulations cannot foreclose this court (or, for that matter, a trial panel) from taking such actions as it finds necessary to preserve the integrity of the practice of law.

In this case, the accused and the Bar stipulated to a

two-year suspension. The trial panel, disagreeing, "recommended"[4] a three year suspension. The case then came to us automatically, ORS 9.536(2), with no appearance by the accused. Because, upon our initial examination of the record, it appeared that the accused's actions with respect to the Chinns might be tantamount to stealing, we submitted the following questions to counsel:

> "1. In view of the nature of the accused's alleged wrongdoing in connection with his representation of [the Chinns] * * * and this Court's decisions in *In re Laury,* 300 Or 65, 706 P2d 935 (1985), *In re Thomas,* 294 Or 505, 659 P2d 960 (1983) and *In re Pierson,* 280 Or 513, 571 P2d 907 (1977), should not this court consider disbarment as a possible sanction?
>
> "2. If this Court is to consider disbarment, should the case first be remanded to the [t]rial [p]anel for consideration of any evidence either party may wish to produce on the question of the appropriate sanction?"

The Bar, in its response, agrees that disbarment is a possible sanction. The general tone of the Bar's response is, however, understandably cautious — the accused's stipulation to the trial panel was made in return for the Bar's agreement to seek a lesser penalty.

The response on behalf of the accused, while it in no way challenges the *authority* of this court to disbar the accused, nonetheless argues energetically that the choice of such a sanction — and, particularly, the choice of such a sanction without a prior remand — is wholly unwarranted:

> "For the Supreme Court now, apparently on its own motion, to consider disbarment * * * would be grossly unfair.
>
> "* * * [S]ettlements such as [were] arrived at in [the accused's] case should be strictly observed. Disciplinary actions in bar proceedings are usually expensive, protracted and traumatic. To the extent to which reasonable settlements and dispositions can be made to avoid the expense and inconvenience to all concerned, they ought to be pursued and[,] once reached, ought to be honored. Bar counsel was fully apprised of the facts and the position taken by [the accused] on the charges when he concluded to recommend the proposed settlement. The [trial] panel was likewise fully apprised and must be presumed to have understood the considerations which im-

---

[4] *See* n 2, *ante.*

pelled [the accused] to plead guilty and approve the settlement."

Whatever the accused's motivations in following the course he took, this court can impose one of a range of sanctions, including disbarment, if it finds it appropriate to do so. ORS 9.536(3). *See also* Oregon State Bar Rules of Procedure 6.1 and 6.2(a). Significantly, it is not asserted by anyone that the accused was unaware that he could be disbarred or that he believed that the stipulation he entered into with the Bar precluded that sanction. At least since *In re Pierson,* 280 Or 513, 518, 571 P2d 907 (1977), we have warned that "a single conversion by a lawyer to his own use of his client's funds will result in * * * disbarment." *Accord, In re Eads,* 303 Or 111, 734 P2d 340 (1987), *In re Laury,* 300 Or 65, 74-76, 706 P2d 935 (1985). We cannot ignore *Pierson* and *Laury* and still keep faith with the Bar or the public it serves. The accused must be disbarred, unless the case is first remanded to the trial panel for reconsideration of the sanction.

From the record and the responses to our inquiries, we see no basis for a remand. The facts would not be changed. There is no suggestion that the accused did not know what sanction he *could* receive, although he obtained the Bar's agreement that *it* would recommend a more limited one. Reopening the case would give the accused a second bite at the apple, nothing more.

The accused is disbarred. The Bar is awarded its actual and necessary costs and disbursements. ORS 9.536(4).