The PEOPLE of the State of
Colorado, Complainant,

v.

Maurice R. FRANKS,
Attorney–Respondent.

No. 89SA501.

Supreme Court of Colorado,
En Banc.

May 14, 1990.

Linda Donnelly, Disciplinary Counsel, and George S. Meyer, Deputy Disciplinary Counsel, Denver, for complainant.

Respondent not appearing.

PER CURIAM.

The respondent, Maurice R. Franks, failed to appear and answer a multiple count disciplinary complaint which resulted in a default being entered against him. *See People v. Richards*, 748 P.2d 341 (Colo. 1987). The hearing board entered findings of fact and a recommendation for disbarment that was approved by the hearing panel and submitted to this court. We approve the findings and the recommendation that Maurice R. Franks be disbarred, assessed the costs of these proceedings, and be ordered to pay restitution to his former clients and others. We disagree, however, with the recommendations of the Grievance Committee as to the amounts to be paid by way of restitution by Franks, and order that Franks make restitution as set forth in this opinion.

Maurice R. Franks is a member of the bar of this court and is subject to the jurisdiction of the supreme court. C.R.C.P. 241.1(b). The hearing panel found that service was sufficient and proper under C.R. C.P. 241.25, and we concur in that finding. *See People v. Madrid*, 700 P.2d 558 (Colo. 1985).

He stated in a letter to the Grievance Committee that he is an expert in matrimonial litigation and wrote *How to Avoid Alimony* (Saturday Review Press—E.P. Dutton & Co., paperback by Signet Books—New American Library), and *Winning Custody: A No–Holds–Barred Guide for Fathers* (Prentice–Hall, Inc., paperback by Reward Books). He asserted in the letter that he wrote numerous articles, lectured widely, and participated in divorce litigation in some twenty-five states. He maintained his law office in Denver and from time to time associated with Bruce R. Teichman in litigation.

Franks accepted new employment and collected retainers in cases until October 21, 1987. On October 23, 1987, he moved to Ireland without notice to nearly all of his clients. At first employees in his office were told to say that Franks was out of the office trying cases and finally, after a period of several weeks, admitted that Franks had moved to Ireland.

Franks acknowledges that he owes some of his clients funds for fees that were not earned and has requested that he be transferred to inactive status until he can return from Ireland to defend the disciplinary charges that have been made against him. He has admitted that he is in dire financial straits and that the unearned fees and retainers that he collected were appropriated to his own use and are no longer available. In responding to the complaints before the Grievance Committee, Franks has used a letterhead identifying himself as an author

doing business in Ireland under the name and style of "Franks & Associates of Ireland, Literary Services."

The findings of fact of the hearing board are supported by the record and establish by clear and convincing evidence that Franks committed the acts and was guilty of the conduct set forth in the eight counts of the disciplinary complaint.

## COUNT I

F. Frank Pagano, a dentist, retained Franks to represent him in a custody matter in association with his local counsel in New Jersey. Dr. Pagano paid Franks a $7,000 nonrefundable retainer pursuant to a signed fee agreement which provided that Franks would bill his service at the rate of $200 per hour. Franks requested that Dr. Pagano's local counsel file a motion for admission of Franks *pro hac vice* in New Jersey. The motion was denied and at that time Franks had expended 5.7 hours of time on Dr. Pagano's case. Dr. Pagano presumed that Franks would do no further work on the case, but later learned that Franks claimed that he spent an additional 15.3 hours of work, or a total of 21 hours on the case, which allegedly entitled him to a fee of $4,200. In March 1987, Dr. Pagano sent a letter to Franks requesting a refund of the unearned portion of the retainer. He received no response and a copy of the earlier letter was again sent to Franks by certified mail. Franks' office signed for the letter on June 15, 1987, but no response was ever received by Dr. Pagano.

Franks, in representing Dr. Pagano, violated C.R.C.P. 241.6 and the Code of Professional Responsibility, DR 1-102(A)(1) (ABA Model Rule 8.4(a)) (violated a Disciplinary Rule), DR 2-106(A) (ABA Model Rule 1.5(a)) (entered into an agreement for, charged, or collected an illegal or clearly excessive fee), DR 2-110(A)(3) (ABA Model Rule 1.16(d)) (failed to return unearned fee upon termination of employment), and DR 9-102(B)(4) (ABA Model Rule 1.15(b)) (failed to pay to the client, as requested, funds in his possession which the client is entitled to receive).

## COUNT II

Robert Smedley, an attorney, represented Patricia Baker in a dissolution action. Franks appeared for Kenneth Baker, her husband. A temporary *ex parte* order was obtained by Smedley on August 18, 1986, which was reduced to judgment on September 2, 1986. On September 12, 1986, Franks entered his appearance and filed a motion to set aside the temporary order and judgment. The court granted the motion and voided the temporary order. On December 5, 1986, Franks filed suit on behalf of the husband against both Mrs. Baker and her attorney, alleging outrageous conduct, abuse of process, malicious prosecution, violation of the husband's civil rights, and wrongful use of *ex parte* proceedings. Franks sought body execution against both the attorney and Mrs. Baker, alleging malice, fraud, willful deceit, and negligence, as well as a reckless and willful disregard of the husband's rights.

Counsel for Smedley's malpractice carrier filed a motion to dismiss supported by a memorandum brief which Franks answered with a brief on behalf of his client. The trial judge dismissed the complaint as frivolous and assessed costs and attorney fees against both Franks and the husband, and imposed joint and several liability. After affidavits were filed on the issue of attorney fees, the court awarded $4,401.50 in attorney fees and $20.00 in costs to Smedley and Mrs. Baker. The court of appeals affirmed the trial court in an unpublished opinion. *Baker v. Baker*, No. 87CA0947 (Colo.App. Nov. 11, 1988).

Franks' conduct violated C.R.C.P. 241.6 and the Code of Professional Responsibility, DR 1-102(A)(1) (ABA Model Rule 8.4(a)) (violated a Disciplinary Rule), DR 1-102(A)(5) (ABA Model Rule 8.4(d)) (engaged in conduct prejudicial to the administration of justice), and DR 7-102(A)(1) (ABA Model Rule 3.1) (filed a suit on behalf of a client when he knew that such action would serve merely to harass or maliciously injure another).

## COUNT III

Franks was retained by Shirley Collins to enforce a Washington court order which granted her authority to retake custody of her children who were taken to Colorado from Washington by the father. Shirley Collins paid Franks $1,000 as a retainer. Franks obtained an order authorizing Colorado peace officers to enforce the Washington court order. When police officers attempted to retrieve the children, counsel for the father notified Franks that the father had filed a dissolution action in Colorado and intended to file a motion to dissolve the order granting Franks' client custody of the children. Following a hearing, the father was awarded temporary custody of the children and the court directed that a home study be conducted by the Department of Social Services. Thereafter, Franks entered into a second fee agreement with Shirley Collins and obtained an additional $3,500 to seek custody of the children. He did not advise his client that he was going to move to Ireland on October 23, 1987, but did set another forthwith hearing on a temporary restraining order, temporary custody, custody evaluation, and permanent custody. A referee heard the motions on September 29, 1987, but did not change the order on temporary custody. Franks objected at that point to the referee hearing the matter and the order was stayed until October 1, 1987, to permit Franks to obtain a transcript.

Thereafter, Franks could not be reached by his client and she was told by those in Franks' office that he was out trying a case. She did not learn until a much later time that Franks had moved to Ireland. Franks' ledger reflects that all of the fees were earned. Subsequently, Shirley Collins retained new counsel who obtained an order granting her primary custody of her children.

Franks' conduct violated C.R.C.P. 241.6 concerning discipline of attorneys and also violated the Code of Professional Responsibility, DR 1–102(A)(1) (ABA Model Rule 8.4(a)) (violated a Disciplinary Rule), DR 1–102(A)(4) (ABA Model Rule 8.4(c)) (engaged in conduct involving dishonesty, deceit or misrepresentation), and DR 6–101(A)(2) (ABA Model Rule 1.1) (handled a legal matter without preparation adequate in the circumstances).

## COUNT IV

Frank J. Shade hired Franks to represent him in a dissolution action filed by Shade's wife. Franks was paid a $3,000 retainer, $2,000 of which was to be nonrefundable and $1,000 was subject to refund if unearned at the conclusion of the case. Thereafter, Franks and his associate, Bruce Teichman, represented Shade to the conclusion of the case. Following the final orders hearing Shade requested an accounting and a refund of any unearned fee. Franks did not account to his client, did not made a refund, and appropriated the funds to his own use. Franks' records reflect that he owes Shade $852.

His conduct violated C.R.C.P. 241.6 relating to discipline of attorneys and also is in violation of the Code of Professional Responsibility, DR 1–102(A)(1) (ABA Model Rule 8.4(a)) (violated a Disciplinary Rule), DR 1–102(A)(4) (ABA Model Rule 8.4(c)) (engaged in conduct involving dishonesty, deceit or misrepresentation), and DR 9–102(B)(3) and (4) (ABA Model Rule 1.15(b)) (failed to render appropriate accounts to clients regarding funds paid to him and failed to deliver funds or other property in his possession to clients as requested).

## COUNT V

Franks was hired by Ted J. Pratt to set aside custody provisions in a separation agreement and to seek the return of Pratt's child to Colorado. Franks was paid a $2,500 retainer and filed several motions to regain custody on the theory of fraud. He asserted that Pratt was led to believe that his wife and child would live close to Pratt and entered into the separation agreement on that basis. On September 26, 1986, all motions were denied, leaving custody of the child with Pratt's ex-wife who resided out of state. Thereafter, Franks filed a notice of appeal and designation of record on appeal. The appeal focused on the trial court's abuse of discre-

tion in denying the motion without oral argument. The court of appeals affirmed the trial court on January 28, 1988, and remanded the matter for a determination of reasonable attorney fees for defense of the appeal. The trial court held a hearing on the issue of attorney fees and ordered Pratt and Franks jointly to pay $4,020.86. Pratt paid the fee.

Franks, in representing Pratt, advised Pratt to record his conversations with his ex-wife. After listening to a particular conversation that had been recorded, Franks advised Pratt to sue his ex-wife and her boyfriend on the theory of outrageous conduct and infliction of severe emotional distress. The complaint prepared by Franks alleged a conspiracy between the ex-wife and her boyfriend to deprive Pratt of his child visitation privileges. Pratt sought $250,000 actual damages, $250,000 exemplary damages due to the defendants' fraud, malice, insult, and wanton and reckless disregard of Pratt's rights and feelings. The defendants filed an answer and counterclaim, and the matter was set for a two-day trial to a jury to commence November 23, 1987.

In October 1987, Pratt received a letter dated October 21, 1987, from Franks advising him that he was leaving the country and that attorney Bruce Teichman would take over the case. Franks moved to Ireland on October 23, 1987. Pratt thereafter received a letter from Bruce Teichman denying that he would handle Pratt's case. Teichman later relayed a settlement offer to Pratt and discussed the offer with him. Pratt rejected the offer because Franks had convinced him that he had a good case. He later learned from talking to numerous attorneys that the suit was without merit. On December 15, 1987, Pratt received a letter from Franks advising him that he would be willing to return from Ireland to handle the trial if he was paid an additional $7,200. Pratt did not reply. On December 21, 1987, Pratt informed the court that he wished to dismiss his case and believed the matter was concluded. He did not, however, realize that his wife's counterclaim was still pending. Judgment was entered against Pratt in favor of his ex-wife on her counterclaim and the judgment was not appealed.

The foregoing conduct of Franks violated C.R.C.P. 241.6 and the Code of Professional Responsibility, DR 1–102(A)(1) (ABA Model Rule 8.4(a)) (violated a Disciplinary Rule), DR 1–102(A)(4) (ABA Model Rule 8.4(c)) (engaged in conduct involving dishonesty, deceit or misrepresentation), DR 1–102(A)(5) (ABA Model Rule 8.4(d)) (engaged in conduct prejudicial to the administration of justice), DR 1–102(A)(6) (engaged in conduct adversely reflecting upon his fitness to practice law), DR 6–101(A)(3) (ABA Model Rule 1.3) (neglected a matter entrusted to him), DR 7–101(A)(2) (ABA Model Rule 1.3) (intentionally failed to carry out a contract of employment), and DR 7–102(A)(1) (ABA Model Rule 3.1) (filed a suit on behalf of one client when he knew or when it was obvious that such action would serve merely to harass another).

## COUNT VI

Franks was retained by James E. Cosgrove to file motions for definite visitation, to modify support, and to obtain visitation rights for Cosgrove's parents. A retainer agreement was signed and Franks was paid $1,000, all of which was nonrefundable. The fee was received on October 15, 1987, and Cosgrove was not told that Franks would move to Ireland on October 23, 1987. On October 29, 1987, Franks filed an entry of appearance, a motion to modify support, and a motion for more definite visitation. None of the motions exceeded one page in length. The motions were prepared prior to his departure for Ireland. When Cosgrove learned that Franks had moved to Ireland he called Bruce Teichman. Teichman declined to represent Cosgrove, but referred him to another attorney who resolved the matter without court intervention. Franks' billing ledger reflects that he spent .9 hours and Bruce Teichman spent one hour, allegedly justifying a $380.00 fee. Franks' paralegal spent 1.8 hours valued at $72, with costs of $32.06, making Franks' total claim $484.06. Franks has refused to refund the unearned portion of the retainer which is $515.94.

The foregoing conduct of Franks violated C.R.C.P. 241.6 and the Code of Professional Responsibility, DR 1–102(A)(1) (ABA Model Rule 8.4(a)) (violated a Disciplinary Rule), DR 1–102(A)(4) (ABA Model Rule 8.4(c)) (engaged in conduct involving dishonest deceit or misrepresentation), DR 2–106(A) (ABA Model Rule 1.5(a)) (charged a clearly excessive fee), DR 6–101(A)(2) (ABA Model Rule 1.1) (handled a legal matter without preparation adequate in the circumstances), and DR 9–102(B)(4) (ABA Model Rule 1.15(b)) (failed to deliver funds or other property in his possession to clients as requested).

## COUNT VII

Louis Stueckrath retained Franks to represent him in a dissolution action filed by his wife. He paid Franks a $3,000 retainer. In addition to the initial consultation, Franks filed several perfunctory motions on August 18, 1987, and handled a short deposition before moving to Ireland without notice to his client. When Stueckrath learned that Franks had moved to Ireland he contacted Bruce Teichman who undertook representation of Stueckrath until he was discharged. Franks' ledger which included Bruce Teichman's time reflects $2,552 in earned fees, plus $287.08 in costs. Accordingly, Stueckrath is entitled to a refund of $160.92. Franks wrote Stueckrath on November 26, 1987 from Ireland admitting that he owed a refund but no refund has been made.

The conduct complained of violated C.R.C.P. 241.6 and the Code of Professional Responsibility, DR 1–102(A)(1) (ABA Model Rule 8.4(a)) (violated a Disciplinary Rule), DR 1–102(A)(4) (ABA Model Rule 8.4(c)) (engaged in conduct involving dishonesty, deceit or misrepresentation), and DR 9–102(B)(4) (ABA Model Rule 1.15) (failed to deliver funds or other property in his possession to clients as requested).

## COUNT VIII

Franks failed to file his 1988 annual registration statement and to pay the $90 registration fee. His conduct violated C.R.C.P. 227(A)(1)(a).

## DISCIPLINARY SANCTION

Franks' pattern of misconduct and his refusal to acknowledge the wrongfulness of his actions demonstrate his total disregard for the rules of this court and the Code of Professional Responsibility. He has failed to cooperate with the Grievance Committee without good cause and has disregarded the requirements of C.R.C.P. 241.6(7). Franks abandoned his practice and converted his clients' funds to his own use. The American Bar Association Standards for Imposing Lawyer Sanctions (ABA Standards) provide guidance in ABA Standard 4.11: "[D]isbarment is generally appropriate when a lawyer knowingly converts client property and causes injury or potential injury to a client." Of equal impact is ABA Standard 4.41(a) which states that "[d]isbarment is generally appropriate when ... a lawyer abandons the practice and causes serious or potentially serious injury to a client...." The American Bar Association Standards for Imposing Lawyer Sanctions are totally consistent with the decisions of this court. In *People v. Reeves,* 766 P.2d 1192 (Colo.1988), we ordered disbarment as a sanction when the respondent lawyer abandoned his practice, vacated his office without notice, and left no forwarding address. *Id.* at 1197. We also ordered disbarment as a sanction when a lawyer misappropriated funds of his client and abandoned his practice. *People v. Frank,* 782 P.2d 769, 771 (Colo.1989).

No mitigating factors appear in the record, but there are a number of aggravating factors which must be considered under the American Bar Association Standards for Imposing Lawyer Sanctions. Franks was previously issued a letter of admonition on March 14, 1981, for a disciplinary offense. *See* ABA Standard 9.22(a). His actions in dealing with his clients, as reflected by the record in this case, establish a dishonest or selfish motive. ABA Standard 9.22(b). His pattern of misconduct in accepting new clients and charging retainers immediately before he moved to Ireland cannot be condoned. ABA Standard 9.22(c). Multiple offenses

and the repetition of the same conduct by Franks is also an aggravating factor. ABA Standard 9.22(d). His bad faith obstruction of the disciplinary process also cannot be ignored. ABA Standard 9.22(e). His substantial experience and expertise in the practice of the law was utilized to collect substantial fees for services that he knew he could not perform and is also a factor. ABA Standard 9.22(i). It is also noteworthy that Franks has been totally indifferent to making restitution and to repaying the funds which he misappropriated. ABA Standard 9.22(j).

## RESTITUTION

■ The record reflects that Franks has not accounted for and has converted the funds of his clients to his own use. The hearing panel recommended that Franks make restitution to the persons listed below in the amounts appearing after their names within:

(a) Dr. F. Frank Pagano: $7,000

(b) Robert Smedley and Patricia Baker: $4,421.50

(c) Shirley Collins: $4,800

(d) Frank J. Shade: $3,000

(e) Ted J. Pratt: $2,500  .

(f) James E. Cosgrove: $1,000

(g) Louis Stueckrath: $3,000

We agree that restitution is required under the circumstances, but cannot determine or properly resolve all the claims that Franks' clients have asserted against him. A civil action must be employed to resolve those issues. We conclude that the record does not support the hearing panel's determination of the amount to be paid by Franks to make restitution. In particular, the hearing panel did not take into account the fees allegedly earned by Franks. With respect to Dr. Pagano, Franks' records reflect an unearned fee of $2,800, and Franks is ordered to pay Dr. Pagano that amount. The hearing panel correctly recommended that Franks pay $4,421.50 to Robert Smedley and Patricia Baker. The record also establishes that Shirley Collins paid Franks a total amount of $4,500 in two installments of $1,000 and $3,500. Franks' records allegedly show that all fees paid by

Collins were earned. Franks sought to enforce a Washington custody order after the initial $1,000 retainer was paid. However, after Collins paid the second fee of $3,500, Franks performed minimal services for Collins and did not pursue the case to its conclusion prior to his departure for Ireland. Under the circumstances, Franks is ordered to make restitution to Collins in the amount of $3,500. Franks' records reflect that out of a retainer of $3,000 paid by Frank J. Shade, $852 should be repaid as an unearned fee, and Franks is ordered to pay that amount by way of restitution to Shade. Ted J. Pratt paid Franks a retainer of $2,500 and Franks sought a change of custody of Pratt's child. Franks' conduct resulted in an award of attorney fees to Pratt's ex-wife in the amount of $4,020.86, which Pratt paid. The record does not show the fees actually billed to Pratt. Under the circumstances, the hearing panel properly recommended that Franks make restitution to Pratt in the amount of $2,500. The record also establishes that Franks appropriated unearned fees paid by James E. Cosgrove in the amount of $515.94 and Franks is ordered to pay restitution to Cosgrove in that amount. Finally, the record reflects that Franks appropriated unearned fees paid by Louis Stueckrath in the amount of $160.92 and Franks is ordered to make restitution to Stueckrath in that amount.

We order Franks to make restitution to the persons listed below in the amounts appearing after their names within:

(a) Dr. F. Frank Pagano: $2,800

(b) Robert Smedley and Patricia Baker: $4,421.50

(c) Shirley Collins: $3,500  .

(d) Frank J. Shade: $852

(e) Ted J. Pratt: $2,500

(f) James E. Cosgrove: $515.94

(g) Louis Stueckrath: $160.92

Accordingly, we order that Maurice R. Franks be disbarred and that his name be stricken from the list of attorneys authorized to practice before this court. He is also ordered to make restitution to the persons and in the amounts set forth in the

previous paragraph of this opinion within six months. We also assess the costs of these proceedings in the amount of $295.61 against the respondent, Maurice R. Franks, and order that the costs and restitution be paid to the Colorado Supreme Court Grievance Committee, 600–17th Street, Suite 500–S, Denver, Colorado 80202–5435, within six months. Since Maurice R. Franks, the respondent, abandoned his practice and his clients on October 23, 1987, when he moved to Ireland, no time is required for the respondent to wind up his affairs. C.R. C.P. 241.21. Disbarment shall be effective on the announcement of this opinion.