Argued and submitted March 1, accused suspended from the practice of law for 12 months, commencing on the effective date of this decision September 2, 1993

In re Complaint as to the Conduct of

## JERRY E. GASTINEAU,
*Accused.*

(OSB 89-35, 89-39, 89-82, 89-83,
90-76, 90-77, 90-126, 91-37;
SC S39713)

857 P2d 136

Jerry E. Gastineau, Medford, argued the cause and filed briefs *in propria persona.*

Susan Roedl Cournoyer, Assistant Disciplinary Counsel, Lake Oswego, argued the cause for the Oregon State Bar and filed the response.

PER CURIAM

## PER CURIAM

In this disciplinary proceeding, the accused is charged with collecting excessive fees, Disciplinary Rule (DR) 2-106(A); with incompetent or neglectful representation, DR 6-101(A) and DR 6-101(B); and with failure to carry out a contract of employment, DR 7-101(A)(2). The accused also is charged with failing to respond in a timely manner to the Oregon State Bar's requests for information concerning complaints made to the Bar by two of his former clients, DR 1-103(C).

On appeal, the accused contests the trial panel's findings that he charged or collected excessive fees in five instances. He also contests the trial panel's findings of failure to provide competent representation and of failure to perform a contract of employment.[1] He does not deny that he failed to respond in a timely manner to the Bar's inquiries. The accused seeks a lesser sanction than the one-year suspension assessed by the trial panel majority.[2] The Bar seeks disbarment. We suspend the accused for 12 months.

█ The Bar filed nine causes of complaint against the accused, involving eight clients. The complaints fall into four categories as indicated by the headings that follow.

### EXCESSIVE FEE CASES

Five clients complained to the Bar that the accused had entered into "nonrefundable" fee contracts with them between August 1988 and September 1989, but that the accused did not complete the work undertaken by him in

---

[1] This court reviews disciplinary cases *de novo*. ORS 9.536(3); Rule of Procedure (BR) 10.6.

ORS 9.536 in part provides:

"(2) If the decision of the disciplinary board is to suspend * * * for * * * longer than 60 days or to disbar the accused attorney, the matter shall be reviewed by the Supreme Court.

"(3) * * * [T]he court shall consider the matter de novo * * *."

BR 10.6 is to a similar effect.

[2] Two members of the trial panel, which found the accused guilty of multiple violations of disciplinary rules, assessed a suspension for one year. The third member recommended that the accused "be suspended for one year * * * [but that] all but three months * * * be stayed * * * [and] be placed on probation for one year * * * [on the condition that he] complete professional office practice and management counseling."

return for payment made to him.[3] The Bar charged the accused with collecting an excessive fee in all those cases with intentionally failing to carry out a contract of employment in some of them, and failing to provide competent representation in several of them.[4] A summary of that contract follows.

The form of contract used by the accused in these cases calls for payment in advance and in full of a fixed-fee amount in return for the accused's promise thereafter to perform a stated professional task. The task involved is described only in brief general terms entered in handwriting in the printed form contract. The fee paid clearly is described as "nonrefundable." Under the contract's provisions, only the accused is given the option to terminate the employment contract, which he can do only for nonpayment by the client. In the contract, the "[c]lient agrees that if not paid, attorney may perform no further legal services until paid" and that the accused could "refuse to present any final decree or order" until paid. In none of the cases involved in this proceeding, however, does the accused seek to justify his failure to perform any of the agreed-upon services on the basis of nonpayment.

---

[3] DR 2-106 in part provides:

"(A) A lawyer shall not enter into an agreement for, charge or collect an illegal or clearly excessive fee.

"(B) A fee is clearly excessive when, after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee is in excess of a reasonable fee. Factors to be considered as guides in determining the reasonableness of a fee include the following:

"(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.

"(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.

"(3) The fee customarily charged in the locality for similar legal services.

"(4) The amount involved and the results obtained.

"(5) The time limitations imposed by the client or by the circumstances.

"(6) The nature and length of the professional relationship with the client.

"(7) The experience, reputation, and ability of the lawyer or lawyers performing the services.

"(8) Whether the fee is fixed or contingent."

[4] DR 6-101(A) provides:

"A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."

The printed contract provides that the "fees and costs set forth" in it "do not include representation on any other matters" except those stated in the handwritten parts of the contract. The contract of employment expressly does not apply to "post-trial motions or appeals of this case."

There is some inconsistency among provisions of the contract concerning payment of the "nonrefundable retainer." For example, the contract requires that the fee be paid in full before the accused will "act as attorney for client," but it also states that the retainer will be applied toward the fees and costs to be earned by the accused's performance. As detailed above, the contract contemplates both that the lawyer may terminate the relationship without finishing performance of the specified task if the lawyer is not paid and also that the nonrefundable retainer, specifically tailored to that task, will be paid in full in advance. The contract with each client includes a specific amount of professional time, stated in an exact number of hours, that the nonrefundable fee amount is agreed to cover and provides that the retainer "shall be applied toward the attorney fees and costs," and that hours "in excess of the time for which attorney is hereby retained * * * will be charged to client and billed in addition to the retainer." Billing is to be "monthly."

The last provisions are more common in a *minimum* fee contract covering work to be performed than they are to either a nonrefundable retainer paid as the price for the lawyer's initial acceptance of professional responsibility in the client's case under an agreement that none of the lawyer's services are paid for thereby, or a flat fee for whatever professional services are required with regard to a specific legal problem.[5] Nonetheless, in all the matters before us involving the form contract, the accused treated the fee amount as a flat fee for the task described. No complaint before us involves a case in which the accused charged by the hour for any time beyond the stated amount that the initial

---

[5] No inference should be drawn from the accused's difficulties in this case that these flat fee agreements are *per se* unethical or that any of the variations mentioned may be an impermissible method for establishing a fee. It is clear that the contract (and thus our decision) has nothing to do with contingent fee agreements. *See generally* Oregon Formal Ethics Opinion No. 1991-54 (relating to contingent fees). This case is only about a flat fee agreement for an individual case.

fee was agreed to cover, nor did the accused keep contemporaneous time records on any of these cases (or on his "nonrefundable contract" cases in general). The clients also treated the contract as one for a flat fee. Thus, the accused and his clients agreed on that interpretation of the contract. The stated fee was for the accused's efforts — for the process of representation — not any hoped-for result.

Use of disciplinary rules to regulate the amount of lawyers' fees is a relatively new development. For many years, the standard applied to determine prohibited excessiveness of fees was taken from equitable concepts for contracts. *See In re Complaint Oren R. Richards*, 202 Or 262, 264, 274 P2d 797 (1954) (lawyer disciplined for charging "unconscionable and exorbitant fee"). The American Bar Association promulgated its Model Code of Professional Conduct in 1969. Oregon adopted DR 2-106 from that code in 1970.

The accused first argues that there can be no excessive fee violation under DR 2-106, where the fees were reasonable *at the time that the initial agreements were entered into*. The Bar's response stresses that the fees *became* clearly excessive due to the accused's non-performance in the cases. The dispute in this case, then, is over *when* a fee may be viewed as clearly excessive where the accused fails to perform the services for which the fee was paid.[6] The Bar has the better of that argument.

A close examination of the text and context of the excessive-fee rule demonstrates that a lawyer may violate DR 2-106(A) by failing to refund an unearned fee under certain circumstances even though the initial advance payment was not unreasonable for the task that a lawyer was to perform in the future. DR 2-106(A) provides that "[a] lawyer shall not enter into an agreement for, charge *or collect* an illegal or clearly excessive fee." (Emphasis added.) The disjunctive use

---

[6] *E.g., Arens v. Committee on Professional Conduct*, 307 Ark 308, 820 SW2d 263 (1991), which holds that a $60,000 nonrefundable fee, although not unreasonable at the time the agreement was entered, constituted an excessive fee when the lawyers involved failed to carry out the agreement. *See also People v. Franks*, 791 P2d 1 (Colo 1990) (lawyer who charged client nonrefundable fee two weeks before the lawyer intended to move to Ireland and who refused to refund the unearned portion is guilty of charging "a clearly excessive fee").

of the word "collect" means that the excessiveness of the fee may be determined after the services have been rendered, as well as at the time the employment began. Also telling in the interpretation of the scope of the rule is the fact that one factor for determining the appropriateness of the amount of a fee, stated in DR 2-106(B)(4), requires consideration of "the results obtained." That wording, at least, suggests that the work for which the fee was agreed has been completed.

This interpretation is consistent with *In re Thomas*, 294 Or 505, 526, 659 P2d 960 (1983), where the court stated: "It would appear that any fee that is collected for services that is not earned is clearly excessive regardless of the amount." Moreover, Legal Ethics Opinions No. 509 (1986), which served as a guideline during the period of time that the excessive fee charges against the accused arose, stated:

> "Assuming the [nonrefundable] fee fixed by Law Firm [initially] is not clearly excessive, Law Firm does not violate DR 2-106(A) by entering into the agreement. However, DR 2-106(A) also provides that a lawyer shall not 'charge or collect' a clearly excessive fee. Law Firm may therefore have an ethical duty to refund a portion of the fixed fee if it turns out to be clearly excessive *in light of the work actually done.*" (Emphasis added.)[7]

■    We conclude that a lawyer violates DR 2-106(A) when he or she collects a nonrefundable fee, does not perform or complete the professional representation for which the fee was paid, but fails promptly to remit the unearned portion of the fee. In this case, the accused expected the clients to live up to the letter of the contract whether or not he performed the agreed services that his part of the contract promised. He acted in accordance with that interpretation of the contract. The accused himself set the amount of the fee in relation to the work to be done. The fees, being for work that the accused never performed, were clearly excessive.

---

[7] Although none of our cases specifically discuss the question in the context of a nonrefundable fee agreement, this court has decided in other cases that fees were "clearly excessive" under DR 2-106. The violations in those cases, however, were found to be due to dishonesty or padding of the time billed. *See In re Miller*, 303 Or 253, 257, 735 P2d 591 (1987) (DR 2-106(A) violated where lawyer charged for more time than actually spent); *In re Potts/Trammel/Hannon*, 301 Or 57, 73-74, 718 P2d 1363 (1986) (revising bill upward in anticipation of litigation rather than in line with actual time spent violates DR 2-106(A)). There is no claim here that the accused's fees initially were set dishonestly.

In the accused's second argument to support the proposition that his fees were not excessive in the five cases, he states as follows: "The mere fact that the 'nonrefundable' fee *may result* in a fee *in excess* of a reasonable hourly fee does not in itself make them unethical either." (Emphasis added.) We do not disagree, but that argument is nonetheless beside the point. We are not dealing here with the issue whether the amount of the fee initially agreed to was excessive for the future work contemplated. None of the fees in the excessive-fee complaints in this case was clearly and convincingly excessive for the tasks that the accused agreed to perform; they became clearly excessive when he failed to perform as he agreed. Nor are we dealing with a situation where a lawyer agrees to take a number of cases from one source with a flat fee charge per case, although some cases take but a short time to complete, while others may take substantially longer.

The accused further contends that a fee cannot become excessive only because later representation is "incompetent." The accused also points to the good results in one case, albeit results that were obtained, finally, by another lawyer. We do not agree that those arguments have relevance in this case. It was the accused's failure to do the agreed work that created the clear excessiveness of the fee. Although incompetence may be a reason why one fails to do the work, it is the lack of agreed effort that causes the excessive fee violation.

In each of the cases in which the accused set a specific fee for specific work and collected the fee for it, but failed to perform that work, the accused is guilty of violating DR 2-106(A) by "collecting" a clearly excessive fee.

One cause of complaint in this case is a bit different, but still results in a finding of a violation of DR 2-106(A). In that case, which involved access to a driveway, the accused did continue to perform until the clients terminated his services for lack of beneficial results. However, the accused already had been paid a flat fee to secure the driveway access when he exacted a second nonrefundable fee for a court hearing on a temporary restraining order related to that matter. Therefore, the second fee was a clearly excessive fee, because the accused already had been paid for the work and had not, in

any event, expended any time in excess of the time stated in the contract.

## INTENTIONAL FAILURE TO PERFORM

■ There were two causes of complaint based on failure to perform a contract of employment. In the driveway access cause of complaint, the trial panel found the accused not guilty of intentionally failing to carry out a contract of employment, DR 7-101(A)(2).[8] We agree. Another lawyer in the accused's office appeared at the court hearing when the accused was unavoidably delayed by unseasonably bad weather in Central Oregon. The hearing did not go well, because a piece of documentary evidence that was important to the accused's client lacked a certification thought necessary to its admissibility in evidence. The hearing resulted in a temporary restraining order being entered against the clients. That poor result does not clearly and convincingly prove that the accused intentionally failed to carry out his contract of employment. Although ultimately ineffectual, his efforts were substantial. In any event, poor results alone neither make a fee excessive nor demonstrate an intent not to perform the agreed work. In another case, one to establish a guardianship, the evidence does not clearly convince us of the intentional nature of the failure to complete the guardianship.

## INCOMPETENCE AND NEGLECT

The question whether a lawyer has competently represented a client is, of course, a fact-specific inquiry.[9] A review of this court's cases shows that incompetence often is found where there is a lack of basic knowledge or preparation, or a combination of those factors. *See, e.g., In re Spies*, 316 Or 530, 534, 852 P2d 831 (1993) (accused found incompetent for

---

[8] DR 7-101(A)(2) provides:

"A lawyer shall not intentionally:

"* * * * *

"(2)  Fail to carry out a contract of employment entered into with a client for professional services but the lawyer may withdraw as permitted under DR 2-110, DR 5-102 and DR 5-105."

[9] DR 6-101(A), requiring competent representation and listing its components, is set out in note 4, *supra*.

representing a client "in a matter outside her area of expertise without acquiring adequate knowledge or skill"); *In re Odman*, 297 Or 744, 750, 687 P2d 153 (1984) (accused found incompetent where facts showed improper and late filings of estate documents; "accused did not know basic steps in administering and closing decedent's insolvent estate"); *In re Chambers*, 292 Or 670, 678, 642 P2d 286 (1982) (accused guilty of incompetent representation where record showed accused "tried the criminal case 'by the seat of his pants' ").

■    In contrast, lawyers have been found not guilty of providing incompetent representation where the lawyers showed experience and professional ability to perform work, *In re Walker*, 293 Or 297, 647 P2d 468 (1982), or where the Bar failed to prove that a position taken by the lawyer was "advanced in pretense or bad faith, or in culpable ignorance," *In re Rudie*, 290 Or 471, 622 P2d 1098 (1981). In sum, competence or incompetence can best be measured on a case-by-case basis using the standard stated in DR 6-101(A) itself.

In one of the cases of alleged incompetent representation now before us, a client came to the accused seeking a rapid incorporation of a family business so that the business could, as a corporation, bid on a government contract. The client told the accused that there was a deadline in the very near future for making that bid. The accused did not review the proposed articles of incorporation that his staff prepared before the articles were submitted to the proper state official. He did not ensure that the amount of filing and other incorporation and registered agent fees that were required by law accompanied the proposed articles when they were mailed to the state official. The filing was rejected for deficiencies in both the information presented and the amount of filing fee tendered.[10]

A violation of the competent representation rule, DR 6-101(A) (set out in note 4, *supra*), was proved in this incorporation matter. *See, e.g., In re Spies, supra*, 316 Or at 534 (previously stated); *In re Odman, supra*, 297 Or at 744 (previously stated).

_____

[10] The record does not make clear whether the client suffered any monetary loss due to these errors by the accused.

In another alleged neglect case, the accused collected no fee for the work that the client expected him to do but that he did not do with respect to a small claims matter.[11] We are satisfied by clear and convincing evidence that the accused failed to perform the work expected and that his client suffered a default judgment as a result. The accused violated DR 6-101(B).[12]

Another cause of complaint concerns representing a juvenile charged with first degree manslaughter in juvenile court in October 1988. It is a closer call.

■ A deputy district attorney who prosecuted the case complained of incompetent and neglectful representation by the accused. There is credible evidence that the accused was not thorough in representing the juvenile, but there is not clear and convincing evidence of neglect or incompetent representation. The trial panel reasoned that the fact that a good result was obtained means that the accused did not neglect a legal matter, under DR 6-101(B), or provide incompetent representation under DR 6-101(A). That factor — the result obtained — is related to whether the amount of a fee is excessive, not necessarily to whether a legal matter has been neglected. If a lawyer does a poor job, but the client fortuitously or through the efforts of others obtains a good result, that does not excuse the lawyer from providing competent representation or justify neglecting the case. However, in this cause of complaint, there is enough evidence that the accused identified the most desirable disposition for his client and deliberately was using the tactic of not getting in the way of a good result to prevent this court's finding by clear and convincing evidence that the accused should have done more. We find the accused not guilty as to that cause of complaint. The accused is guilty of the other charges of neglecting legal matters.

## FAILURE TO RESPOND

The accused does not deny that he failed to respond in a timely manner to the Bar's written inquiry about two of

[11] ORS 46.415(4) prohibits a lawyer from representing any party in a case before the small claims department of a district court without the consent of the court. A party may remove the case to the regular district or circuit court upon payment of added fees mentioned in ORS 46.455(2)(c) or ORS 46.461.

[12] DR 6-101(B) provides:

"A lawyer shall not neglect a legal matter entrusted to the lawyer."

the eight client complaints, thereby violating DR 1-103(C).[13] In both instances, the Bar received no response until many months after the initial inquiry.

The accused is guilty of both charges of failure to respond in a timely manner to the Bar's inquiries.

## SANCTION

In imposing a sanction after finding misconduct, this court considers the following factors: the duty violated, the accompanying mental state of the accused, and the potential or actual injury caused. Factors in aggravation or mitigation also are assessed in determining an appropriate sanction.

The accused's failure to complete work and his doing other work that was not suited to achieving the goals for which the clients hired him violated duties of diligence and of employing professional abilities on behalf of his clients. His failure to communicate effectively with clients violates a duty owed to the Bar to uphold the reputation of the profession. His failure to respond promptly to the Bar's inquiries about client complaints also violates that duty, as well as the duty owed to his profession to respond to inquiries about professional conduct.

The accused's state of mind *at the time that he violated* the excessive fee prohibition is debatable. However, at some point, he clearly had "knowledge" that the tasks for which he had been paid were not completed. Additionally, in one failure-to-respond case, we find that the accused intentionally violated DR 1-103(C), because of the length of time from the Bar's request for information about a client complaint until the accused responded.

There was potential for harm to any client who paid for work that was not done. The client against whom the small claims judgment was entered suffered actual harm from the accused's failure to be sure that the small claims case was not lost, even though she did not take steps available to her to mitigate that harm.

---

[13] DR 1-103(C) provides in part:

"A lawyer who is the subject of a disciplinary investigation shall respond fully and truthfully to inquiries from * * * authority empowered to investigate or act upon the conduct of lawyers * * *."

The ABA Standards for Imposing Lawyer Sanctions (1991) (ABA Standards) do not speak expressly to choice of sanction level where, as in this case, the most prevalent disciplinary violation occurs by way of a lawyer's collecting fees that have become excessive because of failure to perform the agreed professional work. Whether that category of misconduct is classified with failure to preserve the client's property, ABA Standards 4.1-4.14; with violations of duties owed the profession, ABA Standards 7.1-7.2; or with lack of diligence, ABA Standards 4.4-4.3, suspension is appropriate rather than reprimand or disbarment. We conclude that suspension is appropriate and apply mitigation and aggravation factors to the question of appropriate length of that sanction.

## MITIGATION[14]

Clients' complaints about the accused's handling of their cases arose from matters that he undertook between August 1988 and the fall of 1989.[15] In only two cases did the accused's failures to act as the clients expected extend beyond that time. He failed to prevent a small claims judgment from being taken by default against a client in January 1990, and an issue concerning unused client funds from 1989 was not initially complained about until January 1991, or fully resolved until April 1991.

During the period of delay in the present disciplinary proceedings, the accused continued to practice, apparently without additional complaints. The trial panel listed other mitigation, appropriately, as follows:

---

[14] The ABA Standards are used by this court as a guide. ABA Standard 9.32 in part provides that:

"Mitigating factors include:

"* * * * *

"(b) absence of a dishonest or selfish motive;

"(c) personal or emotional problems;

"* * * * *

"(i) delay in disciplinary proceedings;

"(j) interim rehabilitation;

"(k) imposition of other penalties or sanctions."

[15] During that period the accused's staff testified that he had approximately 300 client files open.

"The Trial Panel finds there are factors in mitigation * * * [consisting of] personal or emotional problems, physical disability or impairment and to some extent an apparent attempt at rehabilitation of his office procedures and staffing."

ABA Standard 9.3, remoteness of prior offenses, applies. In 19 years of practice, the accused's disciplinary record consists of a private admonition, related to the first dissolution case that he handled shortly after entering practice.

## AGGRAVATION

The accused persisted in his failure to respond promptly by supplying full information to the Bar about the clients' complaints. The accused contends that his lengthy failure to respond to a Bar request for information about a client's complaint did not prejudice the Bar. That is beside the point. The rule requires compliance, *i.e.*, a response within 21 days. *In re Haws*, 310 Or 744, 751, 801 P2d 818 (1990). Moreover, the Bar was prejudiced. The Bar had to investigate in a more time-consuming way, and the public respect for the Bar was diminished because the Bar could not provide a timely and informed response to the clients' complaints. The accused was an experienced practitioner. ABA Standard 9.22(i). There are multiple offenses, ABA Standard 9.22(c), involving seven out of the 300 client files that the accused had open during the relevant time period.

The ABA Standards do not speak directly to length of a suspension, where that sanction is appropriate. Our cases on excessive fees include a one-year suspension where there was an excessive fee in violation of a specific statute limiting the amount of fees chargeable in that sort of case, neglect of a legal matter by inadequate preparation, and misrepresentations including the lawyer's improper endorsement of a client's name on a check. *In re Sassor*, 299 Or 570, 577, 704 P2d 506 (1985). On the other end of the scale among our excessive-fee cases is a reprimand of lawyers who violated that rule and one other rule but without any dishonesty or misrepresentations. *In re Potts/Trammel/Hannon, supra.* Given the risks created by the accused's neglect of client interests, the lack of thoroughness and preparation in the

incorporation matter, and the number of excessive-fee violations based on failure to perform the agreed work, a significant suspension is appropriate.

The accused is suspended from the practice of law for a period of 12 months, commencing on the effective date of this decision.