In re HERITAGE MALL ASSOCIATES,
Debtor-in-possession.

In re DOWNTOWN ALBANY
ASSOCIATES, Debtor-in-
possession.

Bankruptcy Nos. 694–64711–
aer11, 694–64712–aer11.

United States Bankruptcy Court,
D. Oregon.

July 11, 1995.

Wilson C. Muhlheim, Muhlheim, Palmer, Zennaché & Wade, Eugene, OR, for debtors-in-possession.

Paul J. Garrick, Office of U.S. Trustee, Eugene, OR, for U.S. Trustee.

## MEMORANDUM OPINION

ALBERT E. RADCLIFFE, Bankruptcy Judge.

This matter comes before the court upon the applications filed on behalf of the debtors-in-possession (debtors) to employ the law firm of Muhlheim, Palmer, Zennaché and Wade (the Firm) as attorneys to represent the debtors and the applications of the debtors to employ Charles P. Thompson (appraiser) as appraiser in these cases. The United States Trustee (UST) has filed objections to the employment of these professionals. The UST does not object to their employment, per se, rather, the UST objects to the proposed terms and conditions of their employment.

## FACTS & PROCEDURAL BACKGROUND

These are related cases. Heritage Mall Associates is a California limited partnership and is one of the general partners of Downtown Albany Associates, a California limited partnership. Heritage Mall Associates owns and operates the Heritage Mall located in Albany, Oregon. Downtown Albany Associates owns and operates an office building in Albany, Oregon. The debtors each filed a voluntary petition for relief under Chapter 11, herein, on December 20, 1994. On that same date, the debtors each filed an application to employ the firm to represent them in their respective Chapter 11 proceedings. Two days later, each debtor filed an application to employ appraiser as an appraiser in their respective cases.

In each case, the firm received a retainer on December 14, 1994. In each case the firm deposited the sum of $25,000 into its general account for pre-payment of fees. The application for employment of attorneys in each case reveals that this deposit was made pursuant to the firm's written agreement with the respective debtors to treat the sum of $25,000, in each case, as being earned when received. The Affidavit of Wilson C. Muhlheim in Support of Application for Employment of Attorneys indicates that:

Pursuant to [the Firm's] agreement with the debtor [$25,000] of the retainer [in each case] was treated as earned when received subject to the following:

a. As in all chapter 11 cases, [the Firm] will submit an itemization of its fees and expenses to the court for approval. The court will not allow payment of any fees in addition to the retainer until our time and expenses exceed the amount of our routine charges as described in the attached billing policy statement. Thereafter, the court will approve payment only of the amount by which our routine charges exceed the original retainer.

b. If, upon completion of our services, our routine charges are less than the original retainer, or if the court approves final fees in an amount less than the original retainer, we will immediately refund the difference between the earned fee and the original retainer. (emphasis added)

p. 2, lines 10–21.

The application to employ the appraiser indicates that the appraiser received a $10,000 pre-paid appraisal fee in each case, from debtors, on December 16, 1994. In addition, the appraiser is to receive $100 per hour for depositions, pre-trial conferences and court time, if necessary.

The UST filed objections to these applications. The UST did not object to the employment of the professionals, per se, however, the UST objected to the proposed terms and conditions of the professionals' employment. The thrust of the UST's objection is that the professionals should not receive any pre-paid or earned on receipt fees. In the case of the firm, all funds paid to the firm as a retainer must be placed in the firm's trust account until after application to and allowance by the court. Likewise, the UST objected to the appraiser receiving any pre-paid fees.

A hearing was held on January 13, 1995 at which time this court indicated that it would approve the employment of the firm and the

appraiser. This court further indicated that it was not ruling upon the reasonableness of any fees or the reasonableness of any pre-paid fees at that time. This was based upon the conclusion that such a ruling would be premature and that the question of the reasonableness of fees could be taken up when an appropriate application for compensation was before the court.

The order authorizing employment of attorneys was entered, herein, on January 17, 1995. It provides, in pertinent part, that employment of the firm as attorneys for the debtors is authorized and further provides "[T]hat compensation of said attorneys shall be subject to court review and compliance with the court's local procedures." Likewise, an order authorizing employment of the appraiser was entered on February 27, 1995 containing similar language.

On January 27, 1995, the UST filed its Motions (1) For Ruling on the Objection, (2) To Alter or Amend Order Authorizing Employment of Attorneys, (3) For Amended or Additional Findings of Fact and Conclusions of Law[1]. The UST argues that this court was in error in declining to rule upon the proposed terms and conditions of the firm's employment maintaining that:

> The terms and conditions of employment is a separate question from allowance of fees. Section 328(a) specifically requires the court to approve the terms and conditions. Where, as here, the terms are out of the ordinary, the court should rule on them at the front end.

*United States Trustee's Memorandum in Support of Post-hearing Motions*, p. 3, lines 14–18.

The UST continues to maintain that "earned on receipt" or advance payment retainers are improper per se and should not be allowed. The UST contends that the agreement between the debtors and the firm is an attempt to improperly circumvent the requirements of the Bankruptcy Code requiring that the court approve and allow compensation.

## QUESTIONS PRESENTED

The following questions are presented by the UST's objection.

First, is this court required to approve the proposed terms and conditions of a professional's employment at the front end, as part of the application for employment, or was this court correct in its initial conclusion that such a ruling could be deferred pending this court's normal application and allowance procedures concerning fees?

Second, is an "earned on receipt" or advance payment retainer invalid per se?

Third, if such a fee agreement is not invalid per se, what factors should the court consider to determine its reasonableness?

## DISCUSSION

All statutory references are to the Bankruptcy Code, Title 11 U.S.C. unless otherwise indicated.

### Terms and Conditions of Employment:

Section 1107(a) provides in pertinent part:

[A] debtor-in-possession shall have all the rights, ... and shall perform all the functions and duties, ... of a trustee serving in a case under this Chapter.

Section 328(a) provides in pertinent part:

The trustee, ... with the court's approval, may employ or authorize the employment of a professional person under Section 327 or 1103 of this Title, as the case may be, *on any reasonable terms and conditions of employment,* including on a retainer, on an hourly basis, or on a contingent fee basis. Notwithstanding such terms and conditions, the court may allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions.

■ The question of whether or not the terms and conditions of the proposed em-

---

1. The UST has not filed a similar motion to reconsider, alter or amend the order allowing the employment of the appraiser.

ployment must be approved by the court, as a condition to employment, was considered by the court in *In re Dividend Development Corporation,* 145 B.R. 651 (Bankr.C.D.Cal. 1992). There, the court held:

> Section 328 conditions the employment of counsel under § 327 upon court approval of the reasonableness of that employment. Therefore, a determination as to the reasonableness of a pre-petition agreement at the outset of the case is a necessary condition to the employment under § 327. Further, the authorization in § 328(a) to modify fees "after conclusion of employment, if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions", clearly anticipates that the court will make a determination as to the reasonableness of a fee arrangement at the beginning of a case.

145 B.R. at 655.

The rationale of Judge Ryan in *In re Dividend Development Corporation* is persuasive. Accordingly, I conclude that the UST's position in its motion to alter and amend is correct. This court should not have approved the employment of the firm without approving the fee agreement that had been entered into between the debtors and the firm as reasonable. Accordingly, this court must now consider whether or not the fee agreement between the debtors and the firm should be approved.

**Earned on Receipt or Advance Payment Retainers**

The UST contends that "earned on receipt" retainers are invalid, per se, under Oregon law. Since an attorney may not ethically enter into such an agreement with a client or charge an advance payment for future services, outside of bankruptcy, such an arrangement should not be allowed in the context of a bankruptcy proceeding. A review of the Oregon law on this subject is, therefore, necessary.

*Oregon Law:*

In its memorandum, the UST describes three different types of retainers.

The "classic retainer" which has been described as follows:

> A retaining fee is a preliminary fee given to an attorney or counsel to insure and secure his future services, and induce him to act for the client. It is intended to remunerate counsel for being deprived, by being retained by one party, of the opportunity of rendering services to the other and receiving pay from him; and the payment of such fee, in the absence of an express understanding to the contrary, is neither made nor received in payment of the services contemplated. Its payment has no relation to the obligation of the client to pay his attorney for the services which he has retained him to perform. 7A C.J.S. *Attorney and Client* § 282 (1980) (quoted in *In re C & P Auto Transport, Inc.,* 94 B.R. 682, 687 (Bankr.E.D.Cal. 1988)). Such a retainer is typically modest in relation to the fees for actual services, is earned when paid and is not refundable.

*Memorandum in Support of UST's Objection to Employment of Attorneys,* p. 2, lines 11–22.

The UST argues that the retainers in these cases are not "classic retainers". This argument is based upon Mr. Muhlheim's affidavit indicating that the retainers are for payment of bankruptcy-related services.

The second type of retainer is described by the UST as the "security retainer" which may be defined as follows:

> A second type of retainer agreement between debtors and their attorneys provides that the retainer will be held by the attorneys to secure payment of fees for future services that the attorneys are expected to render. Under such a "security retainer," the money given to the debtors' attorney is not present payment for the future services. Rather, the retainer remains the property of the debtor until the attorney "applies" it to charges for services actually rendered; any unearned funds are turned over by the attorneys....

*In re McDonald Bros. Construction, Inc.,* 114 B.R. 989, 999 (Bankr.N.D.Ill.1990)

According to the UST, the "security retainer" is "standard fare" in Oregon Chapter 11

practice. It is the only form of retainer which the UST acknowledges as valid under both Oregon law and the Bankruptcy Code.

The third type of retainer is defined in the UST's memorandum as the "advance payment retainer" which may also be described as an "earned on receipt retainer". This type of retainer arises in a situation ...

> [I]n which the debtor pays, in advance, for some or all of the services that the attorney is expected to perform on the debtor's behalf. This type of retainer differs from the security retainer in that ownership of the retainer is intended to pass to the attorney at the time of payment, in exchange for the commitment to provide the legal services.

*In re McDonald Bros. Construction, Inc.,* 114 B.R. at 1000.

The UST maintains that D.R. 9–101(A) precludes an attorney from accepting an advance payment of fees, in other words, all payments made by clients with respect to future services must be treated as a "security retainer" and held in trust until the services are rendered.[2] The UST also relies upon *In re Miller,* 303 Or. 253, 735 P.2d 591 (1987), OSB Legal Ethics Opinion 1991–88 and *The Ethical Oregon Lawyer,* § 15.6 (Oregon CLE 1991).

■ A close review of the Oregon authorities reveals, however, that "classic retainers" and "earned on receipt" or "advance payment" retainers are not unethical or invalid per se. This issue is addressed in the May, 1994 edition of the Oregon State Bar Bulletin in the PLF Update in an article written by Barbara S. Fishleder wherein she states at page 33: "Although non-refundable fees are not prohibited in Oregon, lawyers who use this fee arrangement frequently find them-

selves accused of charging excessive fees or of failure to refund unearned fees." She refers to two Oregon Supreme Court cases touching upon this subject. *In re Biggs,* 318 Or. 281, 864 P.2d 1310 (1994); *In re Gastineau,* 317 Or. 545, 857 P.2d 136 (1993).

In *Gastineau,* the Oregon Supreme Court concluded that:

> [A] lawyer violates DR 2–106(A) when he or she collects a nonrefundable fee, does not perform or complete the professional representation for which the fee was paid, but fails promptly to remit the unearned portion of the fee ...

857 P.2d at 140.

In *Biggs,* the Oregon Supreme Court noted:

> Without a clear written agreement between a lawyer and a client that fees paid in advance constitute a non-refundable retainer earned on receipt, such funds must be considered client property ...

864 P.2d at 1316.

Here, it is undisputed that the firm has a clear written agreement with the debtors describing the fee agreement and describing that portion of the retainer in each case which is "earned when received."

The cases make it clear that if the fees are not ultimately earned by the attorney's performance, that any unearned fees must be refunded. Nonetheless;

> Money paid to an attorney under a clear and specific written non-refundable fee agreement is the attorney's money, even before any work is done. For this reason, the money does not belong in the lawyer's

---

2. DR 9–101(A) provides, in pertinent part:

(A) *All funds of clients paid to a lawyer or law firm,* including advances for costs and expenses and escrow and other funds held by a lawyer or law firm for another in the course of work as lawyers, *shall be deposited in one or more identifiable trust accounts* in the state in which the law office is situated.... *No funds belonging to the lawyer or law firm shall be deposited therein except as follows:*

(1) Funds reasonably sufficient to pay account charges may be deposited therein.

(2) *Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited therein* but the portion belonging to the lawyer or law firm may be withdrawn when due unless the right of the lawyer or law firm to receive it is disputed by the client in which event the disputed portion shall not be withdrawn until the dispute is finally resolved. (emphasis added)

trust account. The money must be put into the lawyers general account.

*Oregon State Bar Bulletin,* May, 1994, p. 33.

## Bankruptcy Law

Section 328(a) provides that the court may allow the "[E]mployment of a professional person ... on any reasonable terms and conditions of employment, ..." Reasonableness has been held to be a question of bankruptcy law, and not state law. *In re Printing Dimensions, Inc.,* 153 B.R. 715 (Bankr. D.Md.1993); *In re Dividend Development, Corporation,* 145 B.R. 651 (Bankr.C.D.Cal. 1992); *In re NBI, Inc.,* 129 B.R. 212 (Bankr. D.Colo.1991); *In re C & P Auto Transport, Inc.,* 94 B.R. 682 (Bankr.E.D.Cal.1988).

Section 330(a)(1) provides as follows:

*After notice to the parties in interest and the United States trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to a trustee, an examiner, a professional person employed* under section 327 or 1103—

(A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, professional person, or attorney and by any paraprofessional person employed by any such person; and

(B) reimbursement for actual, necessary expenses. (emphasis added)

Section 331 provides:

A trustee, an examiner, a debtor's attorney, or any professional person employed under section 327 or 1103 of this title may apply to the court not more than once every 120 days after an order for relief in a case under this title, or more often if the court permits, for such compensation for services rendered before the date of such an application or reimbursement for expenses incurred before such date as is provided under section 330 of this title. *After notice* and a hearing, *the court may allow and disburse to such applicant such compensation or reimbursement.* (emphasis added)

In reliance on the above statutes, the UST maintains that all retainers are property of the bankruptcy estate and must be held in trust until fees have been approved by the court based upon application and allowance, after notice and an opportunity for a hearing. "Classic retainers" and "advance payment retainers" are, therefore, impermissible under bankruptcy law, even if they would be allowed under Oregon law, as they serve to improperly circumvent the provisions of §§ 330(a)(1) and 331 cited above. A number of cases support the position taken by the UST. *See, In re NBI, Inc.,* 129 B.R. 212 (Bankr.D.Colo.1991); *In re C & P Auto Transport, Inc.,* 94 B.R. 682 (Bankr.E.D.Cal. 1988) and *In re Printing Dimensions, Inc.,* 153 B.R. 715 (Bankr.D.Md.1993).

The court in *In re McDonald Bros. Construction, Inc.,* 114 B.R. 989 (Bankr.N.D.Ill. 1990), however, reached the opposite result. There, the attorneys received a $12,500 prepetition retainer under a fee agreement very similar to the one involved in these cases. There, the court noted:

In order for a prepetition retainer held by debtor's counsel to be property of the estate, the debtor must have some interest in the retainer itself at the time the petition is filed ... It is certainly true that the court may order a return of any funds paid to a debtor's counsel, within the scope of section 329(a), upon a finding that the payment was excessive. However, the possibility of this return does not give the debtor an interest in the transferred funds at the time the case is commenced. It merely gives the estate a potential claim against the transferee....

Thus, the Bankruptcy Code does not render all pre-petition retainers held by debtor's counsel property of the estate. 114 B.R. at 996, 997.

The court, in *McDonald,* indicated that the protections afforded by § 329 are adequate to safeguard the interests of creditors and other interested parties and to retain sufficient control by the court over fees paid by a debtor to its attorneys. Section 329 provides as follows:

(a) Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a state-

ment of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.

(b) If such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive, to—

(1) the estate, if the property transferred—

(A) would have been property of the estate; or

(B) was to be paid by or on behalf of the debtor under a plan under chapter 11, 12, or 13 of this title; or

(2) the entity that made such payment.

In *In re Dividend Development Corp.*, 145 B.R. 651 (Bankr.C.D.Cal.1992) the court noted:

In summary, the Bankruptcy Code does not preclude a debtor's counsel from receiving an earned on receipt retainer if such an arrangement is permissible under state law. However, an earned on receipt retainer otherwise allowable under state law is subject to the bankruptcy court's review for reasonableness.

145 B.R. at 657.

The Bankruptcy Appellate Panel of the Ninth Circuit in *In re Knudsen Corporation*, 84 B.R. 668 (9th Cir. BAP 1988) affirmed a decision of the Bankruptcy Court of the Central District of California allowing an application procedure whereby professionals employed by the debtor and the creditors' committee would be paid on a monthly basis without prior court approval of billing statements. The reasoning of the appellate panel is particularly persuasive.

We disagree, however, that sections 330 and 331 absolutely prohibit the transfer of funds to professionals prior to compliance with those sections.... [T]he trustee ignores the problem, arising especially in large cases, that when counsel must wait an extended period for payment, counsel is

essentially compelled to finance the reorganization. This result is improper and may discourage qualified practitioners from participating in bankruptcy cases; a result that is clearly contrary to Congressional intent.

84 B.R. at 671, 672.

■ This court is persuaded that the reasoning employed by the courts in *McDonald, Dividend Development Corporation* and *Knudsen* is the better-reasoned view. Section 329 adequately protects the interests of the estate and other interested parties and preserves the full authority of the court to monitor and approve the fees paid by the debtors to the firm, appraiser and other professionals. Indeed, adoption of the position urged by the UST would render the provisions of § 329 largely superfluous. "Earned on receipt" or "advance payment retainers" as well as "classic retainers" are not absolutely prohibited under either the Bankruptcy Code or the law of the State of Oregon.

**Factors to be Considered**

■ Having determined that earned on receipt and classic retainers are not absolutely prohibited, it is appropriate for this court to set forth factors which may be utilized to determine the "reasonableness" of the agreements set forth in these cases.

Some of the factors announced by the Bankruptcy Appellate Panel in *Knudsen* appear to be appropriate. They include the following:

1. Whether or not the case is an unusually large or complex one in which an exceptionally large amount of fees might accrue each month;

2. The court is convinced that waiting an extended period for payment would place an undue hardship on counsel; and

3. The court is satisfied that the firm can respond if disgorgement is ordered.

The court, in *Dividend Development Corporation*, has suggested some additional factors which may be appropriate including: (4) The experience of the professional involved; and (5) Whether or not the firm or other professionals have been precluded from ac-

cepting other employment in order to take the debtor's case.

In addition, this court believes that, an "earned on receipt retainer" agreement should be scrutinized, on a case by case basis, to determine; (6) If that portion of the retainer which is "earned on receipt" is reasonable in its amount. In other words, in order to be reasonable, the "earned on receipt" portion of the retainer should be a sum which is likely to be less than the total amount of fees awarded in the case. If it appears likely, that the fees to be awarded will be less than the "earned on receipt retainer", then the amount of the retainer may be unreasonable and excessive. Finally, (7) The existence of the fee agreement must be adequately disclosed to the court and other interested parties.

The court, in *Dividend Development Corporation*, noted, as urged by the UST in these cases, that the burden is upon the applicant to demonstrate the reasonableness of the proposed fee agreement. This court agrees.

■ Applying the factors set forth above, to the fee agreements before the court in these cases, I find the following:

The nature of the fee agreement was adequately disclosed by the debtors in the applications to employ the firm as their counsel in these cases as set forth in the Affidavit of Wilson C. Muhlheim in Support of Application for Employment of Attorneys and other supporting documentation.

The expertise or the ability of the firm to represent the debtors in these cases was not questioned by the UST. In addition, the exhibits introduced at the January 13, 1995 hearing included a firm resumé which satisfies this court that the firm is well qualified to represent the debtors.

In the DIP's Response to U.S. Trustee's Objection to Employment of Attorneys (the firm's memorandum) filed January 12, 1995, the firm argues persuasively that acceptance of these cases requires that the firm give up other employment opportunities. The reorganization profile filed in the *Heritage Mall Associates* case shows a number of creditors including secured creditors, Cigna Corporation, with a claim of over $13,000,000 and Kearney Street Real Estate Company, with a

claim exceeding $8,000,000. The major asset of this debtor, the mall, is shown as having a liquidation value of $15,000,000 and a reorganization value of $17,000,000. The schedules filed in *Downtown Albany Associates* reveal that the major asset of the debtor, the office building, is valued at an amount exceeding $4,000,000, subject to the secured claims of Kearney Street Real Estate Company for an amount exceeding $4,000,000. This court is satisfied that the firm's agreement to represent the debtors in these cases, precludes the firm from the potential representation of the major secured creditors in these cases and that the amount of time required to effectively represent the debtors, in essence requires the firm, as a practical matter, to forego employment in other cases.

The firm argues persuasively, that the normal procedure followed for interim compensation, will produce an undue hardship upon the firm and require the firm, in essence, to finance the reorganization to a large extent. By the time an interim fee application is processed and heard, if necessary, some of the fees allowed to the firm may be compensation for work performed as much as six months earlier.

Given the nature of the cases, the value of the assets held by the debtors, the size of the secured claims as liens on these assets and a review of actions already taken by the firm in these cases on behalf of the debtors, it is apparent that, and this court concludes, that the amount of the "earned on receipt retainer" is a reasonable amount in each case. It is highly likely that the firm will ultimately be allowed fees far in excess of the $25,000 received by the firm in each case. The cases are sufficiently complex to justify the fee agreement that has been entered into between the debtors and the firm.

This court is not able to conclude, however, that the firm could respond by disgorgement of the retainers if eventually ordered to do so by this court. The UST has not questioned the solvency or ability of the firm to respond if disgorgement is ordered. The UST has argued, however, and this court agrees, that the burden is upon the applicant to establish the necessary factors which would enable this court to conclude that the fee agreement is reasonable. No evidence or representations have been presented to this court con-

cerning the firm's financial status. Since the parties were not aware, before the issuance of this opinion, that such evidence or representations would be required, further proceedings are necessary to completely resolve this matter.

### CONCLUSION

Based upon the foregoing, this court concludes that the position taken by the UST in its post-hearing motions is correct insofar as it is necessary for this court to approve, not only the employment of professionals, but also the proposed terms and conditions of their employment as part of the process whereby the debtors apply to employ the firm to represent them. This court also concludes that "earned on receipt retainers" are not absolutely prohibited, either by the Bankruptcy Code or by Oregon law. Rather, such agreements need to be scrutinized on a case by case basis, applying the factors set forth by the court above.

This opinion shall constitute the court's findings of fact and conclusions of law; they shall not be separately stated.