In re Andrew E. BRESSMAN, Debtor.

Bankruptcy No. 96–25926(WFT).

United States Bankruptcy Court,
D. New Jersey.

May 9, 1997.

Cole, Schotz, Meisel, Forman & Leonard, Michael Sirota, Hackensack, NJ, for debtor-in-possession.

Martin Kaplan, Special Litigation Counsel, Gusrae, Kaplan & Bruno, New York City, for debtor.

Mitchell Hausman, Office of U.S. Trustee, Newark, NJ, for Trustee.

Judith Starr, Securities & Exchange Commission, Northeast Regional Office, New York City, for SEC.

Jerrold Langer, Greiner & Langer, Parsippany, NJ, for Official Unsecured Creditors' Committee.

Daniel Lubell, Hughes, Hubbard & Reed, New York City, for A.R. Baron & Co.

## OPINION

WILLIAM F. TUOHEY, Bankruptcy Judge.

### PROCEDURAL HISTORY

This matter comes before the Court upon Application (the "Application") of counsel to Andrew E. Bressman ("debtor"), the debtor-in-possession, for authorization to use a $150,000.00 pre-petition, non-refundable payment (the "Non–Refundable Payment") by the debtor to his bankruptcy counsel, Cole, Schotz, Meisel, Forman & Leonard, P.A. ("Cole, Schotz"), to finance representation of the debtor in defending pending and potential challenges to both the debtor's global discharge pursuant to § 727 of the Bankruptcy Code, to the extent applicable, and exceptions of debts from discharge pursuant to § 523 of the Bankruptcy Code (collectively the "discharge litigation").

The United States Securities and Exchange Commission ("SEC") has filed memoranda in opposition to the debtor's motion on July 22, 1996; August 19, 1996; December 4, 1996 and December 10, 1996. Counsel for the Official Committee of Unsecured Creditors (the "Committee") has filed an objection to the Application, dated December 9, 1996. A Memorandum of Law objecting to the Application dated January 16, 1997, has also been filed by The United States Trustee. The debtor then filed a Memorandum in reply to the U.S. Trustee's objection on January 28, 1997. The debtor's January 28, 1997 Memorandum incorporates by reference previous submissions filed by the debtor on August 15, 1996 and December 11, 1996.

A hearing was initially held on the issue of retention of debtor's counsel on August 21, 1996 which hearing resulted in a Consent Order being entered by the Court on September 20, 1996 modifying the debtor's retention of Cole, Schotz with respect to the Non–Refundable Payment at issue herein. At the August 21, 1996 hearing, counsel for the trustees for the liquidation of A.R. Baron and Company also objected to the within $150,000.00 Non–Refundable Payment. Subsequent to the entry of the September 20, 1996 Consent Order, a further hearing was held on this matter on February 14, 1997 at which time the Court reserved decision.

Issues relating to the debtor's retention and compensation of bankruptcy counsel pursuant to §§ 328, 329, 330 and 331 of the Bankruptcy Code are "core" proceedings as defined by Congress in 28 U.S.C. § 157.

The within Opinion constitutes the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

### FINDINGS OF FACT

1. On July 3, 1996, the debtor herein, Andrew Bressman, filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. The debtor was the majority owner of a holding company with interest in varying business entities including, A.R. Baron & Co., Inc., ("Baron") a securities broker dealer, of which the debtor was the Chairman, President, and Chief Executive Officer. A.R.

Baron & Co. also filed a voluntary Chapter 11 petition on July 3, 1996.

2. The filing of the debtor's petition in bankruptcy was precipitated in part by the initiation of an Administrative Proceeding against the debtor, Baron and Roman Okin ("Okin"), another principal of Baron, by the SEC on May 29, 1996, (*In the Matter of A.R. Baron, Andrew Bressman and Roman Okin,* Admin. Proc. No. 3–9010 (May 23, 1996)) alleging that the debtor, Baron, and Okin violated federal securities laws, and the issuance by the SEC of a Temporary Cease and Desist Order ("TCDO"). On July 1, 1996, the SEC filed an Order to Show Cause ("OTSC") in the Administrative Proceeding seeking, *inter alia,* a personal freeze over the debtor alleging the debtor's lack of compliance with the TCDO. A hearing on the OTSC was scheduled for July 5, 1996 in Washington D.C. A Consent Order was then prepared, approved by this Court and ultimately filed by counsel on July 11, 1996, which resolved the parties differences regarding the SEC's ability to proceed with the July 5, 1996 hearing in light of the bankruptcy filing. The SEC advises that it is continuing its proceedings against the debtor pursuant to the exception for regulatory actions of 11 U.S.C. § 362(b)(4) and (5).

3. Pursuant to an Order dated July 8, 1996, counsel for the debtor, the law firm of Cole, Schotz, was retained. Because the terms of the Retainer Agreement between the debtor and Cole, Schotz, particularly as respects the firm's representation of the debtor with respect to discharge litigation, are directly at issue here, the Court cites verbatim, the pertinent terms of the July 3, 1996 Retainer Agreement as follows:

*Nondischargeability and Objections to Discharge Actions.*

Sections 727 and 1141 of the Bankruptcy Code provide grounds for objecting to the discharge of a debtor in a bankruptcy proceeding. Section 523 of the Bankruptcy Code provides the bases for a creditor to except certain debts from discharge in a bankruptcy proceeding. The case authority which has addressed the issue has held that generally, counsel for a debtor is not entitled to be compensated out of assets of the bankruptcy estate for services rendered representing a debtor in such proceedings. While there are circumstances when such an action is so intertwined with other aspects of the bankruptcy case that compensation may be allowed from property of the estate, the majority of cases hold that such compensation out of the bankruptcy estate is not permissible. Given the possibility that such actions will be filed, you have elected to pay the firm a $150,000.00, non-refundable payment ("Non–Refundable Payment") to represent you with respect to these actions. You have advised us you believe the amount of the Non–Refundable Payment is reasonable. *This payment is not a retainer and is not property of your estate.* The firm will not seek any further payments from the bankruptcy estate in its representation of you in discharge or non-dischargeability actions. The firm does reserve the right however, and you agree, to provide a source of payment to the Firm, other than property of the estate, (and disclosed to the Bankruptcy Court), in the event that: (a) the firm's fees and costs exceed the $150,000.00 Non–Refundable Payment; or (b) the $150,000.00 Non–Refundable Payment is, for any reason whatsoever, not available to the Firm. If the Firm is not provided with a source of funds sufficient in the Firm's sole discretion, to adequately cover the cost of the firm's representation of you in the discharge or nondischargeability actions, then the firm reserves the right to decline such representation. *You have reserved your right to request that, when all the discharge or non-dischargeability actions are concluded, the Firm return to you any balance of the Non–Refundable Payment after payment of all outstanding fees and costs to the Firm. In the event you exercise your right to terminate the firm's representation of you in the discharge or nondischargeability actions, you also have the right to request that the Firm return to you any portion of the Non–Refundable Payment which exceeds the reasonable value of the services rendered by the Firm in the discharge or non-dischargeability actions.* (Affidavit of

Michael D. Sirota, Esq., filed July 3, 1996, Exh. A) (emphasis added).

4. According to the submissions of debtor's counsel, the debtor caused Cole, Schotz' general retainer and Non–Refundable Payment, as well as the retainer supplied to other professionals, to be wire transferred to Cole, Schotz from the debtor's account with United Overseas Bank (Sirota Certification, filed July 3, 1996, ¶ 8). The debtor instructed United Overseas Bank to wire such funds on July 3, 1996 at 2:00 a.m. and represented in the Retainer Agreement that he received confirmation that the above referenced funds were withdrawn from the United Overseas Bank account the morning of July 3, 1996. As set forth in debtor's counsel's submission to this Court, due to the transfer of funds through an intermediary European Bank and the intervening July 4th holiday, confirmation that the wire transfer had actually arrived in Cole, Schotz's account was not received until July 5, 1996 (Memorandum of Law on Behalf of Andrew E. Bressman in Opposition to the Motion of the SEC to Vacate the Bankruptcy Court's July 8, 1996 Order Approving the Debtor's Retention of Counsel, filed August 15, 1996, page 13).

5. On September 20, 1996, the Court entered a Consent Order modifying the debtor's retention of Cole, Schotz pursuant to the terms of the Retainer Agreement. That Consent Order provided, *inter alia* that the $150,000.00 "Non–Refundable Payment" had to be placed in an interest-bearing account, without prejudice to the rights of (i) the debtor and Cole, Schotz to argue that the "Non–Refundable Payment" is not property of the estate and is in compliance with New Jersey law, and (ii) any party-in-interest to argue to the contrary. In addition, the Consent Order provided that the Court would consider an application by Cole, Schotz, on three (3) days' telecopy notice to all parties, to use any part of the "Non–Refundable Payment" in accordance with the Retainer Agreement between the debtor and Cole, Schotz.

6. According to the submissions of debtor's counsel, the debtor was not receiving any income as of the filing date. On September 24, 1996, January 14, 1997 and March 6, 1997, this Court entered Consent Orders authorizing the debtor to use property of his estate to pay ordinary and necessary living expenses.

7. According to debtor's counsel at the time of the within Application, there were five adversary proceedings pending with this Court seeking to deny the debtor a discharge and except certain debts from discharge.[1] Moreover, the debtor had consented to extensions of time to file discharge complaints to seventeen additional creditors. At the hearing held on December 17, 1996, this Court placed on the inactive list the pending dischargeability adversary proceedings until such time as the Court renders its within decision dealing with the retention of counsel to defend such complaints. On April 2, 1997, this Court signed a third Stipulation and Order to extend the time to file complaints objecting to discharge of the debtor.

8. A review of the debtor's schedules reveals that he has $50,000.00 worth of exempt assets, approximately $40,000.00 of which is the cash value of life insurance policies. Additionally, as is reflected by his Monthly Operating Reports, the debtor has not been earning any income since the filing of the Chapter 11 allegedly due to his pending dispute with the SEC. Therefore, counsel for the debtor argues that potential "alternative" sources of funding dischargeability litigation

---

1. The following adversary proceedings were placed on the inactive list pending the Court's decision concerning the propriety of the Cole, Schotz Retainer Agreement with respect to funding dischargeability complaints:

   (a) *Richard K. Salter v. Andrew Bressman*, Adv. No. 96–2713;
   (b) *Jeffrey Weissman, et al. v. Andrew Bressman*, Adv. No. 96–2687;
   (c) *Managrass International., N.V. v. Andrew Bressman*, Adv. No. 96–2690;

   (d) *James W. Giddens, as Trustee for SIPA Liquidation of A.R. Baron & Co., Inc. v. Andrew Bressman*, Adv. No. 96–2688;
   (e) *Donald H. Balbinder v. Andrew Bressman*, Adv. No. 96–2689,

   The Court recognizes that there may be other pending nondischargeability complaints placed on the inactive list subsequent to the submission of counsel for the debtor's brief on this matter dated January 27, 1997. Any other actions will be treated the same by the Court as respects their inactive/active status.

are insufficient in light of the approximately twenty discharge proceedings facing the debtor.

## DISCUSSION

The specific question the Court must address in this matter is whether the Court may grant the Application of Cole, Schotz to use its alleged $150,000.00 "Non–Refundable Payment" to defend various pending and/or anticipated dischargeability proceedings against the debtor in this individual Chapter 11 proceeding. Counsel for the debtor concedes that were this Court to find that the "Non–Refundable Payment" constitutes property of the estate, that under general bankruptcy principles and caselaw, such funds *cannot* be used to compensate counsel for the debtor as respects dischargeability litigation.[2] Counsel for the debtor argues that the Non–Refundable Payment does not constitute property of the estate, but is rather property of the law firm, having been transferred pre-petition. Counsel further specifically relies on New Jersey case law, under which, non-refundable retainer agreements are generally held to be permissible.

The Court recognizes that although there is no shortage of law on the subject of retainer agreements, it is an area of law that is still developing. To that extent, this Court further recognizes that its review of the interplay and relationship between bankruptcy and *New Jersey* caselaw with respect to pre-petition "non-refundable" or "advance payment" retainer agreements, as is brought into question here, may well be one of first impression in this Circuit.

The legal analysis that must be employed by the Court herein must address the following issues (a) whether or not the "Non–Refundable Payment" is property of debtor's estate pursuant to § 541 of the Bankruptcy Code; (b) how the Court's finding with respect to the above interplays with New Jersey law pursuant to which, "non-refundable" retainer agreements are held to be permissible; and finally, (c) how the balance of equities in this matter may effect the outcome of the Court's decision.

Based upon a review of Bankruptcy Code §§ 328, 329, 330, 331, and 541 and Bankruptcy Rules 2014, 2016, 2017, and bankruptcy and New Jersey caselaw cited by the parties and independently researched by the Court in this matter, including New Jersey Ethics Opinions cited by counsel for the debtor, this Court holds first in accord with the majority of bankruptcy courts to have discussed the issue, and found pre-petition "non-refundable" or "advance payment" retainers for services yet to be earned during the administration of the estate, such as the one in question here, to constitute "property of the debtor's estate" pursuant to § 541 of the Bankruptcy Code and hence prohibit the use of such funds by the debtor to compensate counsel representing the debtor in dischargeability litigations. Second, the Court finds unpersuasive, as discussed in detail below, the debtor's reliance upon the permissibility of non-refundable retainers under New Jersey state law for the reason that such "unearned retainers" are inherently unreasonable in a bankruptcy scenario under Bankruptcy Code § 328(a).[3] The Court specifically finds in this regard that the fundamental issue before this Court remains whether the retainer is permissible in a *bankruptcy context* pursuant to § 328(a) of the Code, and not whether

---

2. As was discussed by the SEC in its Memorandum of Law filed July 22, 1996, at page 8, courts have repeatedly held that estate funds cannot be used to pay for legal representation that benefits the debtor personally, rather than the estate that the debtor in possession has a fiduciary duty to protect (citing 2 Collier on Bankruptcy § 330.05 at pp. 330–48–49 & n. 4) (15th Ed.1996). Among the courts to have held that the defense of a dischargeability action is a service for the debtor's personal benefit that is not compensable from the estate are: *In re Reed,* 890 F.2d 104 (8th Cir.1989); *In re United Church of the Ministers of God,* 84 B.R. 50, 55 (E.D.Pa.1988); *In re Engel,* 190 B.R. 206 (Bankr.D.N.J.1995); and *In re Hogg,* 103 B.R. 207, 209–10 (Bankr.D.S.D. 1988).

3. 11 U.S.C. § 328(a) provides in pertinent part:

(a) The trustee, or a committee appointed under section 1102 of this title, with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 of this title, as the case may be, *on any reasonable terms and conditions of employment, including on a retainer,* on an hourly basis, or on a contingent fee basis. (emphasis added).

such retainers are permissible under state law as counsel for the debtor contends. Third, the Court further denies the Application based upon a review of the equities of this Chapter 11 case since pursuant to the protection afforded the debtor under § 541(a)(6) of the Code, any income earned by the debtor post petition is excluded from property of his individual chapter 11 estate and may therefore be used to find his nondischargeability defense.[4]

## ANALYSIS

### A.  Summary of Arguments

In support of its Application, counsel for the debtor argues in essence that this Court must look to New Jersey law to determine whether the debtor has an interest in the Non–Refundable Payment at the time the petition was filed.  Counsel relies generally on the Supreme Court case of *Butner v. United States,* 440 U.S. 48, 54, 99 S.Ct. 914, 917–18, 59 L.Ed.2d 136 (1979) (holding that Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law) and specifically the Bankruptcy court cases of *McDonald Bros.,* 114 B.R. 989, 997 (Bankr.N.D.Ill.1990) and *In re D.L.I.C., Inc.,* 120 B.R. 348 (Bankr. S.D.N.Y.1990) for the proposition that state law determines whether a debtor continues to hold an interest in funds paid to counsel as a retainer.  As a practical matter, debtor's counsel argues that given the fact that discharge litigation cannot be financed from property of the estate, in an effort to ensure the debtor's adequate representation in the anticipated discharge litigation, Cole, Schotz and the debtor entered into a Retainer Agreement which was responsive to the recent case law and ethics opinions on the permissibility of non-refundable retainers in New Jersey.

Counsel for the debtor does not dispute the Court's authority pursuant to § 329 of the Bankruptcy Code to review the reasonableness of the debtor's compensation arrangement with his counsel, whether paid with estate property or otherwise.  Debtor's counsel contends that because the Court must look to New Jersey Law however, in deciding the Application before it, the Court should not look to decisions of bankruptcy courts from foreign jurisdictions, as relied upon by opposing counsel, which hold that all pre-petition retainers are "security" retainers which become estate property and must be held in trust by counsel on the debtor's behalf, since those decisions are based upon applicable *state law* and ethics opinions requiring that advance fee retainers be maintained in segregated trust fund accounts until earned.  *In re Printing Dimensions, Inc.,* 153 B.R. 715, 720–22 (Bankr.D.Md.1993) (holding that retainer was advance payment for services, and thus counsel could not use or apply retainer until court had allowed fees to counsel, citing Maryland law under which retainer paid in advance for legal services to be performed remains property of the client until it is earned by performance of legal services and must be segregated in separate account); *In re NBI, Inc.,* 129 B.R. 212, 221 (Bankr.D.Colo.1991)(holding that "advance payments" to be credited against future legal services are inherently unreasonable in context of Bankruptcy Code, relying in part on Colorado law to reinforce finding that compensation arrangement was not "reasonable" within the context of 11 U.S.C. § 328(a)); *In re Hathaway Ranch Partnership,* 116 B.R., 208, 216–17 (Bankr.C.D.Cal.1990)(holding that $50,000.00 "earned in full upon receipt" retainer paid on behalf of debtor was advance fee payment that had to be maintained in client trust fund account and could not be drawn upon without prior court approval, rejecting debtor's argument that such arrangements are recognized as appropriate under California law).  Debtor's counsel further alleges, in its most recent submission to this Court, that those cases have "absolutely no bearing" on the issue before the court

---

4.  11 U.S.C. § 541(a)(6) provides:
(a) The commencement of a case under section 301, 302, or 303 of this title creates an estate.  Such estate is comprised of all the following property, whenever located and by whomever held:

(6) Proceeds, product, offspring, rents, or profits of or from property of the estate, except such as are earnings from services performed by an individual debtor after the commencement of the case.

since New Jersey law is "directly at odds" with the state law cited in the *Printing Dimensions*, *NBI* and *Hathaway Ranch* cases.

Finally, counsel cites a report on the Model Rules of Professional Conduct, wherein a New Jersey Supreme Court Committee Opinion directly addressed the issue of whether attorneys must maintain in separate trust accounts (until earned) all retainers paid toward future services. Counsel reports that the Supreme Court Committee "rejected this requirement" because it "would interfere significantly with the variety of retainer fee arrangements that have served the interests of both attorneys and their clients" (Debtor's Reply Memorandum, filed January 28, 1997, page 6) (citing Advisory Committee on Professional Ethics, Opinion 644). Discussing the Supreme Court Committee's alleged rejection of the trust fund requirement, debtor's counsel indicates that the Advisory Committee concluded that "the disposition of retainer fees may properly be the subject of fair and informed agreement between the parties to that relationship" *Id.* (citing Advisory Committee, Opinion No. 644).

Cole, Schotz in arguing in favor of such a pre-petition agreement between the debtor and counsel indicates that the thrust of New Jersey cases and advisory opinions make clear that non-refundable retainers are, in fact, permitted in New Jersey provided the client retains the right to recover (i) any unearned portion of the retainer at the conclusion of the attorney's representation; and (ii) any portion of the retainer which exceeds the reasonable value of the services rendered in the event the client terminates the attorney's representation. *Cohen v. Radio–Electronics Officers Union*, 275 N.J.Super. 241, 645 A.2d 1248 (App.Div.1994), modified, 146 N.J. 140, 679 A.2d 1188 (1996); and *Advisory Committee on Professional Ethics*, Opinion 644 (citing R.P.C. 1.5). The Court notes that, as represented by counsel, there is no dispute between the parties that such retainer agreements are generally permissible, absent bankruptcy, under New Jersey law or that the firm of Cole, Schotz specifically incorporated the above conditions regarding the reasonableness of non-refundable retainer agreements under New Jersey law into their Non–Refundable Payment Agreement with the debtor as respects the dischargeability litigation.

The Court has further carefully reviewed the opposition to the debtor's Application which takes several forms. Initially, the SEC argues that the services contemplated by debtor's counsel in defending the dischargeability actions confer no benefit upon the estate and the retainer is property of the estate that may not be used to find activity benefitting only the debtor personally. The SEC points to what it contends are the "three major fallacies" with the debtor's argument. First, as respects debtor's reliance upon New Jersey Advisory Committee on Professional Ethics Opinion 644, the SEC argues that the fact that a fee arrangement would not subject an attorney to discipline by the state ethics board does not insulate the arrangement from scrutiny by the bankruptcy court. In this regard, the SEC contends that the bankruptcy court has an *independent* obligation to review these arrangements against the background of the Code and Rules and the policies they embody. The SEC cites in particular, 11 U.S.C. § 328(a) which requires compensation arrangements to be reasonable, and § 330(a)(4)(A)(ii) which expressly prohibits compensation for services not likely to benefit the estate or be necessary to its administration. In essence, the SEC contends that in the bankruptcy context, a Non–Refundable retainer enables a debtor to evade the regulatory structure Congress designed to ensure that payments to a debtor's attorney "should be subject to careful scrutiny." H.R.Rep. No. 595, 95th Cong., 1st Sess. 329 (1977). For this reason, it points to what it contends is the "majority" of bankruptcy court holdings which provide that Non–Refundable retainers are impermissible in bankruptcy. *In re Printing Dimensions, Inc.* 153 B.R. at 719.

Second, the SEC argues that even were a non-refundable retainer permissible in bankruptcy, under the circumstances of this case, the terms of the Retainer Agreement between the debtor and Cole, Schotz demonstrate that the debtor did not relinquish all

rights in the retainer necessary to remove it from the estate. The SEC specifically relies on the fact that the agreement provides that the debtor has the right to request a refund of any unused portion of the retainer. This refund right, which they agree is required by state Ethics law, arguably creates a property interest in the estate. *In re Lilliston*, 127 B.R. 119, 120 (Bankr.D.Md.1991). In addition, as a practical matter, the SEC contends that the $150,000.00 is disproportionate to the remaining assets in the debtor's estate and is for that reason also "unreasonable" under the relevant sections of the Bankruptcy Code (Tr. of Hearing of August 21, 1996, page 28).

Third and finally, the SEC contends that even were the retainer in this case truly non-refundable, the transfer does not appear to have been completed before the petition was filed, making the retainer property of the estate insofar as it may have been transferred post-petition. Absent a "credit ticket" showing the funds were credited to the firm's account prior to the filing of the petition, the SEC argues that the transfer was not made pre-petition and must be included as property of the estate (citing *In re Pioneer Commercial Funding Corp.*, 140 B.R. 951, 956 (Bankr.S.D.N.Y.1992)).

In its Memorandum of Law filed in Opposition to the debtor's counsel's Application, the U.S. Trustee's argument centers primarily upon the issue of whether the terms and conditions of Cole, Schotz's employment agreement are reasonable and not excessive pursuant to Bankruptcy Code §§ 328 and 329. Next, the U.S. Trustee too relies on the trilogy of bankruptcy court decisions heretofore cited in *In re NBI, Inc.*, 129 B.R. 212; *Hathaway Ranch Partnership*, 116 B.R. 208 and *Printing Dimensions*, 153 B.R. 715, which cases strike down advance fee retainers in the bankruptcy context as property of the estate and inherently unreasonable in the context of § 328(a) of the Code. Finally, the U.S. Trustee argues that the $150,000.00 payment should be disallowed as excessive pursuant to §§ 329 and 330 of the Bankruptcy Code. In this regard they allege that the debtor in this case appeared to have little bargaining power in entering into the retainer agreement with Cole, Schotz in that at the time of the filing, the debtor was on the eve of having his assets frozen by the SEC.

The relief requested by objecting counsel is that the Court should cancel the advance payment retainer paid to Cole, Schotz and require disgorgement of the funds and their placement in the debtor's DIP account.

## B. Treatment of the "Non–Refundable Payment" by Statute and Caselaw

■ Bankruptcy Code § 327(a) requires the Court to supervise a debtor's attorney-client relationships. Counsel for debtors may only serve with court approval. *In re Printing Dimensions, Inc.*, 153 B.R. at 717. The Court's authority to oversee such relationships specifically extends to legal fees. Pursuant to §§ 328(a), 329(b) and 330(a) of the Bankruptcy Code, counsel fees must be allowed by the Court. To be allowed, fees must be reasonable and for actual and necessary services. *Id.* Pursuant to Bankruptcy Code § 329(a) and Bankruptcy Rules 2014(a), and 2016, all representation of a party in interest and fee arrangements, must be disclosed by a debtor's counsel to the Court and creditors.[5] Pursuant to § 329(b) of the Code and Bankruptcy Rule 2017, the Court may determine if a pre- or post-petition transfer to an attorney, direct or indirect, in contemplation of, or related to, a case is excessive. 153 B.R. at 718. To the extent the compensation is deemed in excess of the reasonable value of the services rendered, the Court may cancel such agreement or order the return of any such payment. 11 U.S.C.

---

**5.** At the outset, the Court prefaces its holding herein with the acknowledgment that in the present case, there is no question but that the Cole, Schotz firm complied completely with the disclosure requirements under the Code and Rules in their representation of this debtor. Moreover, there is no dispute by the parties nor this Court that in structuring the fee arrangement as it did with this debtor, as respects defense of the debtor in the pending and potential nondischargeability claims, that the firm in drafting its retention agreement as it did, was crafting what it believed quite possibly to be the only manner in which the debtor could find a defense of such claims, that is, out of funds not characterized as property of the estate.

§ 329(b).[6]

The Bankruptcy Court of the District of Maryland in *In re Printing Dimensions, Inc.*, specifically discussed the jurisdiction of the bankruptcy court to monitor retainer agreements as follows:

One way or another, the Bankruptcy Court must supervise retainer agreements between debtor and counsel. The Bankruptcy Court may:

1. Allow, and authorize disbursement of, interim compensation to debtor's counsel during administration of an estate. 11 U.S.C. § 331; Bankr.R.2016(a). *See also* Bankr.Rule 2017(b);

2. Cancel any compensation agreement or order return of payments, if excessive, made within one year pre-petition for services in contemplation of, or in connection with, a bankruptcy case. 11 U.S.C. § 329; Bankr.Rules 2016(b), 2017(a);

3. Review a plan to determine if payments for services in connection with a case are reasonable. 11 U.S.C. §§ 1129(a)(4), 329(b)(1)(B); and

4. Award final compensation in a case. *Id.* at § 330; Bankr.Rule 2016(a). 153 B.R. at 715.

As was further recognized by the *Printing Dimensions* Court, and is confirmed by this Court's independent review, the majority of bankruptcy courts to have considered the issue have held that a pre-petition retainer paid by a debtor to counsel for services in connection with a case is security for, or held in trust for, payment of fees and costs to be incurred. 153 B.R. at 718 (citing *inter alia, In re Chapel Gate Apartments, Ltd.*, 64 B.R. 569 (Bankr.N.D.Tex.1986))(terms of agreement between counsel and debtor or debtor's principals were not binding upon court or upon court's rulings concerning disposition of retainer, and describing retainer as "fully earned and non-refundable" did not make it so); *In re C & P Auto Transport, Inc.*, 94 B.R. 682 (Bankr.E.D.Cal.1988) (non-refundability provision in retainer agreement is unenforceable in bankruptcy); *In Matter of Colin*, 44 B.R. 709 (Bankr.W.D.Mo.1984)

(counsel are to be circumspect respecting exacting their fees in advance and, in most imaginable circumstances, they should not collect awards or fees until they have been actually earned and awarded by order of the court); *In the Matter of Independent Sales Corp.* 73 B.R. 772 (Bankr.S.D.Iowa 1987) (supporting idea that retainer obtained by attorney for debtor prior to filing petition for relief is held in trust to extent it is for services to be rendered during pendency of Chapter 11 case); *In Re Tri–County Water Assn., Inc.*, 91 B.R. 547 (Bankr.D.S.D.1988) (citing the "general rule" that pre-petition retainers are held in trust for the debtor, and the debtor's equitable interest in this trust constitutes property of the estate); *In re NBI, Inc.*, 129 B.R. 212 (cited herein) and *In re Hathaway Ranch Partnership*, 116 B.R. 208 (also previously cited).

Under the above-referenced majority view, the retainer is generally held to be property of the estate under various subsections of Bankruptcy Code § 541. 153 B.R. at 718. In finding in accord with the majority view, this Court specifically rejects the dual arguments put forth by debtor's counsel as applied to the facts herein that, first, by its terms, the "Non–Refundable Payment" in question here is not a "pre-petition retainer," and second, that since the money was (arguably) transferred pre-petition as payment in full, the funds are property of the law firm and not of the estate. As to counsel for the debtor's first contention, the Court finds that a pre-petition retainer by any other name, (*i.e.* a pre-petition "Non–Refundable Payment" for services yet to be performed in this Chapter 11), is still a "pre-petition retainer" and as such constitutes property of this debtor's estate pursuant to § 541.

As to this first point, the Court has reviewed the case of *In re Heritage Mall Associates*, 184 B.R. 128 (Bankr.D.Or.1995) wherein the bankruptcy court analyzed three different types of retainers. Briefly, a "classic retainer" was described as a "retaining fee" given as a preliminary fee to counsel to insure and secure his future services, and

---

**6.** Pursuant to § 331 of the Code, counsel for the debtor may file interim fee applications only

once every 120 days, unless the Court permits more frequent applications. 153 B.R. at 715.

induce him to act for the client. *Id.* at 131. It is intended to remunerate counsel for being deprived, by being retained by one party, of the opportunity of rendering services to another and receiving pay from him. The payment of such fee, in the absence of an express understanding to the contrary, is neither made nor received in payment of the services contemplated. *Id.* Its payment has no relation to the obligation of the client to pay his attorney for the services which he has retained him to perform. *Id.; see also, In re Renfrew Center of Florida Inc.,* 195 B.R. 335, 338 (Bankr.E.D.Pa.1996); *In re Pannebaker Custom Cabinet,* 198 B.R. 453 (Bankr.M.D.Pa.1996), and *Quaker Distributors, Inc.,* 189 B.R. 63, 69 (Bankr.E.D.Pa. 1995) (describing the various types of retainers).

A second type of retainer is the "security interest" retainer which is defined as an agreement between debtors and their attorneys which provides that the retainer will be held by the attorneys to secure payment of fees for future services that the attorneys are expected to render. Under such a "security retainer," the money given to the debtors' attorney is *not* present payment for the future services. Rather, the retainer remains the property of the debtor until the attorney "applies" it to charges for services actually rendered any unearned funds are then turned over by the attorneys to the debtor. *Id.* (citing *In re McDonald Bros. Construction, Inc.,* 114 B.R. 989, 999 (Bankr.N.D.Ill. 1990)). Such "security retainers" are standard fare in Chapter 11 cases, are unquestionably property of the estate pursuant to § 541, and are subject to proper fee application by debtor's counsel to the Court. *See Pannebaker,* 198 B.R. at 459 ("A prepetition security retainer is a traditional, valid and proper means for an attorney for a Chapter 11 debtor to secure some assurance of future payment for valuable services rendered during the course of a bankruptcy case"). Parenthetically, as applied to the facts herein, the Consent Order entered by this Court on September 20, 1996 modifying the debtor's retention of Cole, Schotz, and holding the money in an interest bearing account, pending this Court's ultimate resolution of the matter herein, temporarily treated the $150,-000.00 "Non–Refundable Payment" as a "security retainer" under the above definition. As is recognized by all parties concerned, the problem with allowing this particular retainer to be ultimately viewed as a "security retainer" is that since such retainers are property of the debtor's estate, it would not be available to be used for its intended purpose, that is, to find this debtor's nondischargeability defense.

The third type of retainer is the "advance payment retainer" which is defined as an "earned on receipt retainer." *Id.* This type of arrangement was described by the *Heritage Mall* Court as arising in a situation:

> [I]n which the debtor pays, in advance, for some or all of the services that the attorney is expected to perform on the debtor's behalf. *This type of retainer differs from the security retainer in that ownership of the retainer is intended to pass to the attorney at the time of payment, in exchange for the commitment to provide the legal services.* 184 B.R. at 131 (citing *In re McDonald Bros. Construction, Inc.,* 114 B.R. at 1000) (emphasis added); *see also, Renfrew,* 195 B.R. at 339.

In determining what category a specific retainer falls within, courts generally review the description contained in the professional's application for employment including the terms of any retainer agreement. *Pannebaker,* 198 B.R. at 459. To the extent a professional seeks a determination that a retainer is a classic or advance payment retainer, the burden rests with the professional to so establish. *In re Mondie Forge Co.,* 154 B.R. 232, 238 (Bankr.N.D.Ohio 1993). Here, it is undisputed that the Cole, Schotz firm has a clear written retainer agreement with the debtor, the provisions of which cited above verbatim dealing with the Non–Refundable Payment fall squarely within the definition of the standard "advance payment retainer." Upon close scrutiny, like the standard "advance payment retainer" described above, the $150,000.00 payment under the Agreement *sub judice* is by its terms, deemed not to be "property of the estate." That is, ownership of the finds is clearly intended by the parties to vest immediately in Cole, Schotz. Moreover, the payment is

intended to be in full for the firm's agreement to represent the debtor with respect to the dischargeability litigation. (Sirota Affidavit filed July 3, 1996, Retainer Agreement—Exh. A). Under the above analysis, such "advance payment retainers" have been held by a *majority* of courts to be property of the estate. This Court is in agreement with the majority view.[7]

The Court finds further support for its finding that under the Agreement in question, albeit drafted to comply with New Jersey Law, the $150,000.00 unearned advance payment constitutes property of this estate. The Court prefaces support for its finding in that under the Agreement, the debtor retains a right of refind of any unearned balance of the Payment as well as a right of refund to any portion of the Payment which is deemed to exceed the reasonable value of the services performed (Sirota Affidavit, filed July 3, 1996, Exh. A). Where such a right of refund exists, at least one court has held that since the debtor retained an equitable interest in the retainer as of the filing date, the prepetition retainer is property of the bankruptcy estate. *See In re Lilliston,* 127 B.R. 119, 121 (Bankr.D.Md.1991).

The above finding by this Court that prepetition advance payment retainers such as the Non–Refundable Payment in question

here constitutes property of the bankruptcy estate pursuant to § 541 of the Code renders moot the argument between the parties as to whether or not the transfer of the $150,-000.00 occurred pre- or post-petition. In this regard, the Court specifically finds that even assuming that counsel for the debtor were able to conclusively prove its position that the wire transfer of the monies to the Cole, Schotz firm from the foreign bank account occurred prior to the time of filing, the advance payment retainer under the above analysis nevertheless would still constitute property of the debtor's estate under the majority view and hence cannot be used to fund nondischargeability litigation. Therefore, the Court rejects counsel for the debtor's second contention as outlined above.

## C. The State Law Argument

In essence, counsel for the debtor argues that state law defines the debtor's interest in property, *see Lilliston,* 127 B.R. 119, and that applicable New Jersey state contract law and Ethics Advisory Opinions recognize the potential for attorney retainers generally to be "earned on receipt" if an attorney and client so intend. In analyzing the debtor's position with respect to the propriety of its retainer agreement with the debtor under New Jersey state law, this

---

**7.** *In Printing Dimensions, Inc.,* 153 B.R. at 719, the Court recognized that advance payment retainers in exchange for a commitment to provide legal services have been considered by a *minority of bankruptcy courts* not to be property of the bankruptcy estate. Although disagreeing with the rationale, the Court in *Printing Dimensions* recognized the underlying reasoning of the minority view is that *ownership of the retainers is intended to pass at the time of the conveyance, and therefor, the debtor does not have an interest in the retainer itself at the time of the filing.* Consequently, it is argued by debtor's counsel in those cases, like Cole, Schotz in the case *sub judice,* that the retainers would only be subject to disclosure under § 329. The minority view was upheld in the case of *McDonald Bros. Constr.,* 114 B.R. at 996–1002 relied upon in part by Cole, Schotz.

The Court's own independent research has also found the minority view espoused by the courts in *Dividend Development Corporation,* 145 B.R. 651, 657 (Bankr.C.D.Cal.1992) (holding that the Bankruptcy Code does not preclude a debtor's counsel from receiving an earned on receipt re-

tainer if such arrangement is permissible under state law. However, an earned on receipt retainer otherwise allowable under state law is subject to the bankruptcy court's review for reasonableness); *Knudsen Corporation,* 84 B.R. 668 (9th Cir. BAP 1988) (affirming a decision of the Bankruptcy Court for the Central District of California allowing an application procedure whereby professionals employed by the debtor and creditors committee would be paid on a monthly basis without prior court approval of billing statements); *In re Burnside Steel Foundry Co.,* 90 B.R. 942 (Bankr.N.D.Ill.1988) (holding that if a retainer paid to a professional pre-petition is intended to cover *all* services to be rendered in connection with debtor's bankruptcy case, professional acquires ownership of the retainer prepetition, and the retainer is not property of the estate unless and until it is recovered under statutes governing debtor's transactions with attorneys); and most recently in *In re Renfrew Center of Florida Inc.,* 195 B.R. 335 (Bankr. E.D.Pa.1996) (pre-petition retainers paid to law firm were permissible advance payments, court finds that outcome is "fact sensitive" and should be "construed restrictively").

Court agrees with the holding of the Bankruptcy Court for the District of Colorado in the case of *In re N.B.I.*, 129 B.R. 212 (Bankr. D.Colo.1991), wherein the Court, in rejecting the argument of debtor's counsel, stated:

> The fundamental issue before this court remains not whether "earned retainers" are permissible under state law, but whether they are reasonable in the bankruptcy context. Reasonableness for this purpose is not defined exclusively by state law, but primarily by bankruptcy law. 129 B.R. at 212.

In ultimately specifically rejecting counsel for the debtor's position that state law regarding the propriety of retainer agreements is the *controlling issue,* this Court finds persuasive the rationale employed in *NBI* which rejects such agreements as inherently unreasonable under § 328(a) of the Bankruptcy Code for the reasons which follow:

> An "earned retainer," whatever its amount, is inherently unreasonable in the context of Section 328(a). *The concept of an "earned retainer" is simply an anomaly in a Chapter 11 case.* This fact has been implicitly recognized in each of those bankruptcy court decisions to date which decline to elevate the form of a contract over the substantive provisions of the Code or to ignore those provisions in favor of expediency. In this court's view, *In re C & P Auto Transport, supra,* and *In re Hathaway Ranch Partnership, supra,* reflect an assessment of the issues pertinent here which is consistent with both the spirit and the letter of applicable law.
>
> "Earned retainers" are unreasonable in a bankruptcy case because they impermissibly circumvent the explicit and implicit requirements of the Bankruptcy Code and Rules pertaining to compensation of professionals, particularly debtor's counsel. The Code provides for such compensation only for *actual and necessary* legal services and related costs. Absent specific authorization by the Court, such compensation is allowed only *after* such services have been provided and such costs incurred, not before. *See In re Orthopaedic*

*Technology,* 97 B.R. 596, 601 (Bankr. D.Colo.1989).

Moreover, the *NBI* Court reasoned:

> "Earned retainers" are unreasonable in bankruptcy because they effectively nullify the protections afforded the estate and its creditors by the Code and Rules. *Parties in interest and the Court have the right, if not the duty, to monitor the conduct of the case and related expenditures which have potential impact on the assets of the estate.* (citation omitted). Parties in interest are entitled to notice and an opportunity to be heard on matters which affect them in advance, not after the fact.

Finally, the *NBI* Court stated:

> "Earned retainers" also allow debtor and counsel to impermissibly usurp the court's authority under the Code and Rules. They purport to substitute the discretion of counsel and debtor for that of the Court. The administrative convenience urged by counsel as justification for allowing "earned retainers" without prior fee applications does not absolve the court of its statutory obligations. (citations omitted) (emphasis added). 129 B.R. at 212.

While the ability of a debtor to find a nondischargeability defense out of funds which would otherwise not be available in the Chapter 11 is the primary reason in this case for the establishment of the pre-petition "advance payment" or "earned" retainer, rather than the "administrative convenience" argued in *NBI*, this Court concurs with the rationale set forth in *NBI* and therefore holds that debtor's counsel's Application to use the within pre-petition retainer must be denied.

### D. Equitable and Due Process Considerations

Finally, the Court addresses the equitable and due process considerations. At the hearing on this matter on August 21, 1996, this Court raised a concern regarding the ability of this debtor to defend himself from what promises to be significant dischargeability litigation in this individual Chapter 11, should this Court deny counsel's Application for use of its pre-petition non-refundable retainer.[8]

---

8. Counsel for the debtor informed the Court at the hearing on August 21, 1996, that the figure

(Tr. of Hearing of August 21, 1996, page 35). Given the fact that under current caselaw, an individual cannot look to property of the estate to pay legal fees for his or her defense of nondischargeability actions, the Court queried whether the debtor's only option may be to defend himself *pro se* should estate funds not be available to him from which to pay his attorneys.

The Bankruptcy Court of the District of Maryland in the *Lilliston* case was confronted with a similar concern. The *Lilliston* court stated:

> Debtor's counsel argues that prohibiting a debtor from paying a retainer to assure a defense in a nondischargeability action would contravene the intent of Congress to assure an honest debtor a fresh start. Debtor's counsel maintains that such a prohibition could force a debtor to defend a dischargeability objection without counsel, which could thereby render any defense ineffective. Counsel relies on *In re Deihl* in which the Bankruptcy court for the District of Maine concluded that a debtor's counsel was entitled to compensation for legal services rendered to a debtor in defense of a nondischargeability complaint. *In re Deihl,* 80 B.R. 1 (Bankr.D.Me.1987). The *Deihl* court relied on *In re Gray,* 7 C.B.C. 571, 583 (Bankr.D.Me.1975) which rejected as inequitable and against Congressional intent, the practice of allowing debtors to initiate voluntary bankruptcy proceedings and to surrender their assets in anticipation of discharge relief, only to be denied effective relief because the debtors lack the necessary legal counsel with which to litigate their right to a discharge or to the discharge of a particular debt. *In re Deihl,* 80 B.R. at 2. 127 B.R. at 122.

The Court notes that as was recognized in *Lilliston,* the *Deihl* court also relied on *In re Spisak,* 2 B.C.D. 1592, 1594 (Bankr.D.N.J. 1977), a decision within this District, for its conclusion that a rigid rule disallowing attorney's fees for defense of nondischargeability

actions is inappropriate. 127 B.R. at 122 (citing *In re Deihl,* 80 B.R. at 2). It was argued that "such a rule would contravene Congress' policy of permitting honest debtors a fresh start, since it would force them to defend dischargeability actions without the necessary legal counsel." *Id.* (citing *Deihl,* 80 B.R. at 2). On balance, the *Lilliston* Court, as does, this Court, ultimately found the argument unpersuasive.[9] Judge Derby in *Lilliston* stated:

> The arguments raised by debtor's counsel, and found persuasive by the *Deihl* court, do not give adequate recognition to other factors which mitigate against use of estate assets to defend a debtor's personal interests. There is no benefit to the estate or to creditors in defending objections to dischargeability or to a debtor's discharge. There is no interest of creditors served in a liquidation case, for which creditors should be expected to pay, from defense of such actions, whether successful or unsuccessful. The benefit sought by defending such actions is for the debtor alone. Further, the Bankruptcy Code allows a debtor some resources to pay for such a defense, namely, assets which a debtor exempts under 11 U.S.C. § 522(b) and an individual debtor's future earnings. 11 U.S.C. § 541(a)(6). Indeed, the bankruptcy court in *In re Leff* concluded that requiring a debtor to use such assets "furthers the fresh start objective of the Bankruptcy Code while not putting the full burden of the debtor's legal expenses on the estate and, consequently on the creditors." 127 B.R. at 122 (citing *In re Leff,* 88 B.R. 105, 109 (Bankr.N.D.Tex.1988)).

█ Upon researching the issue and weighing its concerns, the Court is now satisfied that debtor's counsel's Application must be denied. As was recognized by this Court in its decision, *In the Matter of James Taylor,* 91 B.R. 302 (Bankr.D.N.J.1988) aff'd. 103 B.R. 511 (D.N.J.1989), Bankruptcy Code

---

involved in the dischargeability litigation thus filed was somewhere between three and five million dollars. (Tr. 37).

9. The Court notes that in its review of this argument, the holdings in *Deihl* and *Gray* as relied

upon by debtor's counsel were subsequently rejected and repudiated by the same court that has issued the opinions. *In re Irving Waxman,* 148 B.R. 178, 182 (citing *In re Kingsbury,* 146 B.R. 581 (Bankr.D.Me.1992)).

§ 541(a)(6) excludes from the estate, earnings from services performed by an individual debtor after the commencement of the Chapter 11 case. The Congressional history of § 541, particularly Senate Report No. 95–989 at the time the initial bill was passed in November of 1978, reflects that the commencement of a bankruptcy case pursuant to § 301 of the Code creates a specific estate. Senate Report No. 989, 95th Cong. 2nd Sess. 5–6, reprinted in U.S.Code Cong. & Admin. News 5791–92. Pursuant to § 541, said estate is comprised of all legal and equitable interests of the debtor in property wherever located as of the commencement of the bankruptcy proceeding. *Id.* It is against this general historical perspective that § 541(a)(6) must be read. *Taylor*, 91 B.R. at 312. Section 541(a)(6) is a fundamental protection built into the Code for the benefit of debtors.[10] *See Matter of Noonan*, 17 B.R. 793 (Bankr.S.D.N.Y.1982). Having said that, this Court finds that § 541(a)(6) provides a real mechanism for this debtor to exclude post petition earnings as a find for his defense of pending and potential nondischargeability litigation. The fact that the debtor, as is reflected in his Monthly Operating Reports, and as is emphasized by his counsel, cannot or will not obtain post petition income, having once earned a yearly salary in the seven figures, is rejected as unpersuasive. While the ability of the debtor to continue his former employment may be blocked, his ability to work in some filed of endeavor remains. Therefore, the Court holds that the protection afforded by § 541(a)(6) is sufficient to satisfy any due process concerns.

## CONCLUSION

For the foregoing reasons, this Court finds that the pre-petition "Non–Refundable Payment" in question constitutes property of the estate pursuant to § 541 of the Bankruptcy Code as an advance payment retainer for services yet unearned in the defense of nondischargeability litigation. The debtor's reliance on the propriety of such retainers under New Jersey law is unpersuasive insofar as the retainer in question does not meet the requirement of reasonableness under § 328(a) of the Code.

In so holding, the Court recognizes that to accept the argument of debtor's counsel concerning the viability of its pre-petition "Non–Refundable Retainer," albeit in conformance with New Jersey state law, would set a dangerous precedent. This Court is unwilling to establish such a precedent. Moreover, this Court is further unwilling to establish such a precedent, particularly as respects the ability of a debtor to use such a pre-petition retainer to find a nondischargeability defense, when such defense funded from estate property, is clearly and unquestionably rejected by the vast majority of bankruptcy caselaw.

The debtor's Application to use the $150,-000.00 Non–Refundable Payment be and is hereby denied. Pursuant to the authority vested in the Court under § 329 of the Bankruptcy Code, counsel for the debtor is hereby ordered to disgorge the funds currently being held in the interest bearing account pursuant to the September 20, 1996 Consent Order, and deposit them forthwith in the debtor's DIP Account, subject to further Order of the Court.

All pending dischargeability litigation currently placed on the "inactive list" pending this Court's resolution of the issue of the "Non–Refundable Payment," shall be immediately reinstated to the "active list" simultaneously with the issuance of the within Opinion.

---

10. The reasoning behind § 541(a)(6), as was recognized by this Court in *James Taylor*, is that the protection afforded prohibits creditors from forcing a debtor into future servitude for the payment of debts.